52 A.3d 1077

**ALLSTATE LIFE INSURANCE COMPANY, Appellee**

v.

**COMMONWEALTH of Pennsylvania, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 29, 2011.

Decided Aug. 2, 2012.

John Joseph Butchar, PA Office of Attorney General, John Barley Delone, Office Attorney General, Linda L. Kelly, John G. Knorr III, Calvin Royer Koons, PA Office of Attorney General, Harrisburg, for Commonwealth of Pennsylvania.

Lauren Weldon, Robert L. Weldon, Harrisburg, Keefer Wood Allen & Rahal, L.L.P., for Allstate Life Insurance Co.

Steven Burgess Davis, Karl Stewart Myers, Stradley, Ronon, Stevens & Young, LLP, Philadelphia, for Appellee Amicus Curiae, Insurance Federation of PA.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## ORDER

PER CURIAM.

**AND NOW**, this 2nd day of August, 2012, the Court being evenly divided, the Order of the Commonwealth Court is **AFFIRMED.**

Justice ORIE MELVIN did not participate in the decision of this case.

Justice EAKIN, in support of affirmance.

The Commonwealth of Pennsylvania, Department of Revenue, appeals the Commonwealth Court's order vacating the Board of Finance and Revenue's resettlement order. Being equally divided, we affirm.

The Guaranty Association Act, 40 P.S. § 991.1711, provides:

(a) A member insurer may offset against its premium tax liability to this Commonwealth a proportionate part of the assessments described in section 1707 to the extent of twenty per centum (20%) of the amount of such assessment for each of the five (5) calendar years following the year in which such assessment was paid. In the event a member insurer should cease doing business, all uncredited assessments may be credited against its premium tax liability for the year it ceases doing business.

(b) The proportionate part of an assessment which may be offset against a member company's premium tax liability to the Commonwealth shall be determined according to a fraction of which the denominator is the total premi-

ums received by the company during the calendar year immediately preceding the year in which the assessment is paid and the numerator is that portion of the premiums received during such year on account of policies of life or health and accident insurance in which the premium rates are guaranteed during the continuance of the respective policies without a right exercisable by the company to increase said premium rates.

*Id.*, § 991.1711(a)-(b).

The purpose of the Act is to protect Pennsylvania residents who are policyholders and beneficiaries of policies issued by insurers who become insolvent. In accordance with the Act, insurance companies doing business in Pennsylvania are assessed to contribute to the Pennsylvania Life and Health Insurance Guaranty Association. *Id.*, § 991.1701. If a member insurance company becomes insolvent, the Guaranty Association uses its funds to continue coverage and pay claims.

The assessments exist in the nature of advances or loans by the solvent insurers, which they are authorized to recover in one of two ways—by adjusting premiums, or through a tax credit. *Id.*, §§ 991.1707(g), 991.1711(a). The tax credit is only available for that portion of the assessment related to policies with fixed premiums that cannot be increased. *Id.*, § 991.1711(b). That is, if the assessment can be recouped by increasing premiums on the policies for which the assessment is attributable, no tax credit is allowed—conversely, if increasing premiums is not possible, tax credit is the only means of recovering the assessment. The tax credit option is designed to allow the insurer to fully recoup the assessment at a rate of 20% per year over a five-year period following the assessment year. *Id.*, § 991.1711(a). The portion of each assessment eligible for tax credit is established by multiplying the assessment by the "proportionate part factor," a ratio representing that portion of that assessment which is attributable to guaranteed premium policies. *Id.*, § 991.1711(b).

In 1993, Allstate Life Insurance Company filed an Annuity Considerations Tax Report reflecting a tax liability of

$486,124; Allstate claimed a tax credit of $319,553 against this amount based on prior years' assessments attributable to annuities. The Pennsylvania Department of Revenue accepted the tax liability as reported, but allowed no tax credit for annuity assessments; it reduced the tax credit to $29,207.74. Allstate filed a petition for resettlement with the Board of Appeals, which increased Allstate's tax credit to $389,148.72. This amount reflected 20% of 1991 and 1992's life insurance assessments statutorily reduced by a proportionate part factor, as well as 20% of the 1991 annuity assessments, unreduced by the proportionate part factor because annuity assessments maintain a fixed premium. The Appeal Board reduced the tax credit for the 1992 annuity assessments by a factor consisting of taxable annuities over total annuities; the factor did not consider the portion of annuities attributable to guaranteed premium policies.

Allstate contested the Appeal Board's disallowance of the tax credit for the 1992 non-taxable annuity assessment to the Board of Finance and Revenue, which found a tax credit should be permitted regarding the 1991 guaranteed premium life and annuity assessments, as well as the 1992 guaranteed premium life assessments. However, the Board of Finance limited the tax credit for 1992 annuity assessments to only those involving taxable annuities, and decreased Allstate's tax credit from $389,148.72 to $380,352.90. Allstate appealed to the Commonwealth Court, contesting the Board's disallowance of the tax credit for the 1992 assessments related to non-taxable annuities.

The Commonwealth Court vacated the Board of Finance's order and remanded the matter for recalculation of Allstate's tax credit. The court, in establishing a method for calculating the tax credit, found the proportionate part factor denominator should be calculated separately for each type of insurance product, and annuities should be included in the factor numerator. *Allstate Life Ins. Co. v. Commonwealth,* 992 A.2d 910, 921–22 (Pa.Cmwlth.2010) (*Allstate I* ). The Department filed exceptions to this holding, which the court overruled, finding its interpretation of the Act was proper. *Allstate Life Ins. Co.*

6

*v. Commonwealth,* No. 89 F.R. 1997, unpublished memorandum at 4 (Pa.Cmwlth. filed October 15, 2010) *(en banc)* *(Allstate II).*

The Commonwealth Court considered only the question of how the tax credit should be calculated pursuant to the Act, and found the Act was ambiguous. *Allstate I,* at 919. The court first considered the "proportionate part factor," which is expressed as a fraction. The court observed that the statute calls for the denominator to reflect the "total premiums received by the company during the calendar year immediately preceding the year in which the assessment is paid." 40 P.S. § 991.1711(b). The court found the factor denominator should be calculated separately for each type of insurance product, as opposed to reflecting the sum of all collected premiums, so as to be based on the total premiums of each assessment class and subclass.[1] *Allstate I,* at 921–22.

The court next considered whether the proportionate part factor numerator should include fixed premiums from annuities. Section 991.1711(b) qualified the numerator as "that portion of the premiums received during such year on account of policies of life or health and accident insurance *in which the premium rates are guaranteed during the continuance of the respective policies without a right exercisable by the company to increase said premium rates.*" *Allstate I,* at 921–22 (quoting 40 P.S. § 991.1711(b)) (emphasis in original). Thus, while Allstate could never recover the annuity assessment via premium increases, this portion of the statute does not specify inclusion of annuity policies. Because the proportionate part factor is meant to eliminate from the tax credit only those assessment amounts which could be recovered through premium increases, the court concluded the annuity premiums must be included in the numerator. *Id.,* at 922. The court found to

1. "There are two types of assessments: Class A funds the Association's expenses. Class B is used to cover the policy benefits of insolvent insurers. Class B assessments are subdivided into the life insurance and annuity account; and the health insurance account. 40 P.S. § 991.1704(a). Within the life insurance and annuity account there are three sub-accounts: 1) life insurance; 2) annuity; and 3) unallocated annuity." *Allstate I,* at 912 (citing 40 P.S. § 991.1704(a)(1)(i)-(iii)).

exclude annuities from the numerator would make the tax credit illusory. *Id.*

Judge Pellegrini dissented in both Commonwealth Court opinions, believing the statute is clear and unambiguous and precludes a tax credit for any type of annuity assessments. *Allstate I,* at 923 (Pellegrini, J., dissenting); *Allstate II,* at 1 (Pellegrini, J., dissenting). President Judge Leadbetter joined both of Judge Pellegrini's dissents, while Judge McCullough joined the second dissent.

On appeal, the Department offers the following question for our review:

Whether 40 P.S. § 991.1701 *et seq.,* the Guaranty Association Act (the Act), should allow for tax credits for assessments paid on annuities despite the statutory language at issue which specifically excludes annuities in the computation of such credit?

 This presents a matter of statutory interpretation, and "[a]s this is a purely legal question, our standard of review is *de novo* and scope of review is plenary." *In re Milton Hershey School,* 590 Pa. 35, 911 A.2d 1258, 1261 (2006) (citation omitted). "[T]he objective of all interpretation and construction of statutes is to ascertain and effectuate the intention of the legislature." *Bayada Nurses v. Dept. of Labor and Indus.,* 607 Pa. 527, 8 A.3d 866, 880 (2010) (citing 1 Pa.C.S. § 1921(a)). Generally, the best indication of the General Assembly's intent is the plain language of the statute. "When the words of a statute are clear and free from all ambiguity, they are presumed to be the best indication of legislative intent." *Chanceford Aviation v. Chanceford Twp. Bd. of Supervisors,* 592 Pa. 100, 923 A.2d 1099, 1104 (2007) (citations omitted). When, however, the words of a statute are ambiguous, a number of factors are used in determining legislative intent. Furthermore, "it is axiomatic that in determining legislative intent, all sections of a statute must be read together and in conjunction with each other, and construed with reference to the entire statute." *Hoffman Min. v. Zoning Hearing Bd.,* 612 Pa. 598, 32 A.3d 587, 592 (Pa.2011) (citation

omitted). Moreover, statutes are considered to be *in pari materia* when they relate to the same persons or things, and statutes or parts of statutes *in pari materia* shall be construed together, if possible. 1 Pa.C.S. § 1932. Courts are required, if possible, to give effect to each provision or subsection of the statute. *Id.,* § 1921(a).

The Department contends the Commonwealth Court erred in finding the statute ambiguous, ignoring its plain language by allowing tax credits for annuities. It maintains the sections at issue are not inconsistent; they are different because they refer to different subjects. It argues the legislature specifically chose not to include any language referring to annuity premiums in § 991.1711(b), and the Commonwealth Court rewrote the statute by including those premiums in the proportionate part factor calculation. It also maintains even if the statute is ambiguous, the court improperly applied the canons of statutory construction and failed to consider the purpose or history of the Act.

Allstate counters that the Act as a whole establishes no intention to treat annuities differently than other policies with regard to tax credits. Allstate argues the Act shows that the assessments are in the nature of advances, intended by the legislature to be fully recoverable. It contends it is unreasonable to suggest the omission of the word "annuity" in the provision of the proportionate part factor evidences legislative intent to limit the explicit provisions in the remainder of the Act. It maintains the Department's interpretation would contradict the Act by precluding recovery of any annuity assessments, as a tax credit is the sole means for annuity insurers to recover assessment amounts.[2]

Examination of the relevant statute compels us to find it ambiguous. The ambiguity is not a result of confusing words, or as here, a curious omission of words. Rather, it comes from a disparity between what the statute says is its desired

**2.** An *amicus curiae* brief filed by the Insurance Federation of Pennsylvania notes that if Pennsylvania does not allow tax credit for annuities, it will be the only such construction of the Model Act of all the states that have adopted a version of the tax credit provision.

result and a flaw in the methodology that would prevent accomplishment of that result. The legislature assessed companies based on all premiums received, and intended companies to recoup the assessments, through tax credits if necessary. The assessment calculation included annuity premiums. However, when describing the calculation of the tax credit, the statute's language omits annuities; if followed literally, the credit for assessments attributable to annuities would always be zero.

Section 991.1707 provides for the assessment of insurers, based on total premiums. It references annuities specifically, and shows separate accounting for life, annuity, and health policies. It provides for recoupment of the assessments paid, through tax credit or premium adjustment. It even grants a certificate for the amount of assessment paid, which the statute says is to be considered an asset. It does not distinguish between types of insurance products or assessments, other than for bookkeeping purposes within the Association. Section 991.1707(e)(1), which limits assessment amounts, actually groups "life and annuity" accounts together.

We cannot reconcile the language showing manifest and specific intent in § 991.1707 with the language purporting to effectuate that purpose in § 991.1711. Had the legislature intended to exclude recoupment of annuity assessments, it would not have referenced § 991.1711 in § 991.1707 in the manner it did. Had exclusion been the intent, exclusion would have undoubtedly been accomplished expressly; it is difficult to believe the legislature meant to accomplish such a curious prohibition through a tacit omission in the description of a numerator.

Section 991.1711 must be read *in pari materia* with § 991.1707, which describes the types of assessments. While the meanings of § 991.1711 and § 991.1707 may seem to be unambiguous when each section is read separately and without context, they are here laid side by side, for statutes are not to be interpreted in such a segregated fashion. *See, e.g., O'Rourke v. Commonwealth*, 566 Pa. 161, 778 A.2d 1194, 1201 (2001) ("[W]e should not interpret statutory words in isolation,

but must read them with reference to the context in which they appear."); *Consulting Engineers Council of Pa. v. State Architects Licensure Bd.,* 522 Pa. 204, 560 A.2d 1375, 1377 (1989) (appellant's argument fails as it is premised upon excerpting one subsection from context in which it appears—effect of one subsection can only be understood in relation to provisions in rest of section); *Philadelphia Housing Authority v. Pa. Labor Relations Bd.,* 508 Pa. 576, 499 A.2d 294, 299 (1985) ("A cardinal rule of statutory construction is that we must give terms in a statute the meaning dictated by the context in which they are used."); *Pennsylvania Soc. Serv. Local 668 v. Pa. Labor Relations Bd.,* 481 Pa. 81, 392 A.2d 256, 258–59 (1978) (provisions of statutes should be construed with reference to similar matter and should not be read in vacuum).

Upon determining that a statutory provision is ambiguous, this Court is guided by the rules of statutory construction in order to determine the intent of the General Assembly in passing the provision at issue. 1 Pa.C.S. § 1921(a). These well-established rules include consideration of:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

*Id.,* § 1921(c). Moreover, we should presume "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable ... [and it] intends the entire statute to be effective and certain." *Id.,* § 1922(1)-(2). Because the goal of judicial interpretation is to ascertain and give effect to the legislative intent, we must ascertain that intent and construe the statute accordingly.

■ The Act was clearly designed to provide policyholders protection from insolvency of their insurer, and does so by requiring other insurers to contribute funds they can later fully recoup by one of two methods. As premiums for annuities are always fixed, it is impossible for members to recoup assessments for annuities through premium increases; their only option is the tax credit, using the proportionate part factor. To include annuities in the denominator but not in the numerator of the proportionate part factor means the two sections of the statute are in contradiction to each other. The consequence of interpreting § 991.1707 and § 991.1711 in isolation, and construing § 991.1711(a) and (b) separately, leads to the oxymoronic result of providing tax credit for a group of policies, then excluding that group from the tax credit formula. We see no rationale or purpose for such an approach in the statute, and none appears in the arguments of the Department.

Equally telling is the certificate. Section 991.1707(h) provides that each insurer paying an assessment is issued a certificate of contribution that may be shown on its books as an asset. It is contradictory for a statute to define, nay, certify the assessment as an asset, and then provide a formula under which that asset is mathematically equal to zero. We find no cognizable reason the legislature wanted to create a certificate showing assessments for annuities as an asset, but make the asset unrecoverable. We are offered no reason to distinguish fixed premium annuities from any other fixed premium policy, nor any reason to deny tax credit when they are included in the same assessment program where other guaranteed premium policies get a 100% tax credit.

The issue is not simply that annuities are not specifically listed in § 991.1711(b). Instead, we must consider that § 991.1711(b) contains the formula for carrying out the tax credits provided for in § 991.1711(a), yet it specifies annuities in only half of the formula. To provide for tax credits with a calculation that must always result in zero is more than ambiguous, it is somewhere between Catch–22 and Orwell's 1984. We cannot find our legislature intended such a result.

We decline to read this statute such that subsections contradict each other, nor in a manner in which related sections are made ineffective by the operation of each other.

Because the Court is evenly divided, the order of the Commonwealth Court is affirmed by operation of law.

Jurisdiction relinquished.

Justice ORIE MELVIN did not participate in the decision of this case.

Chief Justice CASTILLE and Justice McCAFFERY join the Opinion in Support of Affirmance.

Justice BAER files an Opinion in Support of Reversal in which Justice SAYLOR and Justice TODD join.

Justice BAER, in support of reversal.

This Court should not disregard the plain language of a statute merely because we think the legislature meant something different. Similarly, we should exercise the necessary restraint to decline to fill an omission in a statute when the plain language of that statute is otherwise clear and does not require supplementation. Respectfully, when statutes are clear and unambiguous, this Court is bound by the words on the page. Thus, in our role as a reviewing court, it is inappropriate to theorize what the legislature intended when a statute plainly says what it says.

These are not just rules that jurists follow when confronted with a statutory challenge; these are the foundation upon which the guiding principles of statutory construction are built. In our respectful view, the Opinion in Support of Affirmance ("OISA") disregards these precepts by finding portions of the Pennsylvania Guaranty Association Act, 40 P.S. §§ 991.1701, et seq. ("Guaranty Act"), ambiguous because of an omitted term. Instead, for the reasons that follow, we would find that the plain language of the Guaranty Act is unambiguous and controls, reverse the order of the Commonwealth Court, and remand this appeal for further proceedings.

In 1992, amid growing concern regarding the insolvency of insurance companies, the General Assembly passed wide-ranging amendments to the Insurance Act of 1921. As part of those amendments, the legislature formed the Pennsylvania Life and Health Insurance Guaranty Association ("Guaranty Association") to protect Pennsylvania insureds "against failure in the performance of contractual obligations, under life and health insurance policies and annuity contracts ... because of the impairment or insolvency of the member insurer that issued the policies or contracts." 40 P.S. § 991.1701; *see also* *id.* § 991.1704(a) (entitled "Creation of Association"). Insurance companies doing business in Pennsylvania, *i.e.* "member insurers," pay assessments to the Guaranty Association, which, in turn, uses the money collected through those assessments "to pay benefits and to continue coverages" should a member insurer become insolvent. *Id.* § 991.1701. This appeal concerns a provision of these amendments to the Insurance Act which permits member insurers, such as Appellee, Allstate Life Insurance Company, to recoup payments made to the Guaranty Association.

Under Section 991.1704, the Association maintains two accounts into which member insurers pay their assessments: life insurance and annuity, and health insurance. *Id.* § 991.1704(a)(1)-(2). The life insurance and annuity account is further broken into three separate sub-accounts: life insurance, annuity, and unallocated annuity. *Id.* § 991.1704(a)(1)(i)-(iii).[1] These assessments are collected based upon the premiums received by member insurers on account of "business in this Commonwealth." *Id.* § 991.1707(c)(2). For the life insurance and annuity accounts and subaccounts, the Guaranty Association assesses each member insurance at a rate of no more than two percent of premiums received. *Id.* § 991.1707(e)(1).

The heart of this matter lies in the next relevant statutory provision, Section 991.1711, which permits a member insurer

---

1. Annuities and unallocated annuities differ in that unallocated annuities are "not issued to and owned by an individual...." 40 P.S. § 991.1702.

14

to offset its Section 991.1707 assessment by twenty percent annually over the five-year span immediately following the payment of the assessment. Specifically, Section 991.1711 provides, in relevant part:

(a) A member insurer may offset against its premium tax liability to this Commonwealth a proportionate part of the assessments described in section 1701 to the extent of twenty per centum (20%) of the amount of such assessment for each of the five (5) calendar years following the year in which such assessment was paid. In the event a member insurer should cease doing business, all uncredited assessments may be credited against its premium tax liability for the year it ceases doing business.

(b) The proportionate part of an assessment which may be offset against a member company's premium tax liability to the Commonwealth shall be determined according to a fraction of which the denominator is the total premiums received by the company during the calendar year immediately preceding the year in which the assessment is paid and the numerator is that portion of the premiums received during such year *on account of policies of life or health and accident insurance* in which the premium rates are guaranteed during the continuance of the respective policies without a right exercisable by the company to increase said premium rates.

*Id.* § 991.1711(a)-(b) (emphasis added).

As noted by the parties to this appeal, the proportionate part fraction described in subsection (b) is calculated separately for each account and subaccount. The result of the calculation is found by dividing the amount of guaranteed premiums a member insurer collects "on accounts of policies of life or health and accident insurance" by the total premiums received for that account or subaccount.[2] This case concerns exclusively whether annuities are included in the numerator of the

2. Graphically, the fraction for each type of account and subaccount is:

$$\frac{Guaranteed\ Premiums}{All\ Premiums}$$

proportionate part fraction, despite that the above-emphasized language of subsection (b) does not reference annuities. Practically, because premiums for annuities are always guaranteed, if annuities are not included, member insurers will not receive any offset for assessments related to annuities; conversely, if annuities are included, insurers will receive the maximum offset for all annuities-related assessments.

The OISA concludes that annuities are included in the numerator as defined by subsection (b). In so doing, it finds subsection (b) to be ambiguous and thus engages in statutory interpretation to reach this holding. In our view, the plain language of subsection (b) is unambiguous and controls; thus, a statutory interpretation analysis is improper.

In justifying the venture into statutory interpretation, however, the OISA curiously determines that the alleged ambiguity in subsection (b) is due to "a disparity between what the statute says is the desired result and a flaw in the methodology that would prevent accomplishment of that result." OISA Op. at 1081. This logic, however, ignores the plain, statutory language in order to pursue the alleged spirit of the statute and a desired result, which, of course, this Court should not do. *Koken v. Reliance Ins. Co.*, 586 Pa. 269, 893 A.2d 70, 82 (2006); 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.").

Here, it may seem harsh that member insurers are required to pay assessments on annuity premiums and not receive a twenty percent offset on those assessments, when the offset is available for life, health, and accident insurances. Nonetheless, the plain language of subsection (b) does not include annuities in the numerator of the proportionate part fraction. The OISA disregards language that is present, arguing that if the General Assembly "intended to exclude recoupment of annuity assessments, it would not have referenced § 991.1711 in § 991.1707 in the manner that it did." OISA Op. at 1081.

Such a justification for delving into statutory interpretation in the face of plain language, in our respectful view, sets a

16

dangerous precedent. The OISA cites to what it believes the General Assembly's intent was when enacting the Guaranty Act and fashioning Sections 991.1707 and 991.1711 in 1992. However, "only when the words of a statute are ambiguous should a court seek to ascertain the intent of the General Assembly through consideration of statutory construction factors." *Commonwealth v. Davidson*, 595 Pa. 1, 938 A.2d 198, 216–17 (2007). The OISA seemingly acts in the reverse: it examines the alleged intent to rationalize the disregard of the statute's clear language and plain meaning.

Moreover, this Court should not "supply omissions in a statute, especially where it appears that the matter may have been intentionally omitted. It makes no difference that the omission resulted from inadvertence, or because the case in question was not foreseen or contemplated." *Commonwealth v. Shafer*, 414 Pa. 613, 202 A.2d 308, 312 (1964); *see also Mohamed v. Commonwealth, Dep't of Transp., Bureau of Motor Vehicles*, 40 A.3d 1186, 1193 (Pa.2012) (noting that a lack of symmetry between two statutes does not create a latent ambiguity that this Court must resolve through the rules of statutory interpretation). Simply put, this Court may not insert terms into a statute, which plainly are not present. It is perilous indeed if this Court countenances a mechanism by which we can forego the "best indication of legislative intent," *i.e.* the plain language of a statute, simply because, in a court's view, the statutory design may be flawed. *See e.g. Commonwealth v. Shiffler*, 583 Pa. 478, 879 A.2d 185, 189 (2005). It could well be that the General Assembly purposefully kept annuities out of the numerator of the proportionate part factor.[3] With the plain language of Section 991.1711(b) as our benchmark, this Court should come to no other conclusion.

3. The OISA agrees with Allstate that the General Assembly could not have intended to treat annuities differently from other insurances, especially life insurance, and thus finds it "difficult to believe the legislature meant to accomplish such a curious prohibition [of annuities from the numerator] through a tacit omission." OISA Op. at 1081–82. An annuity is starkly different from life insurance, however. Annuities are generally contracts between an investor and insurance companies; life insurance policies provide for the needs of beneficiaries upon the insured's death. Annuities are often times paid to the insured himself,

Accordingly, we would hold that based upon the plain language of Section 991.1711(b), guaranteed premiums from annuities are not included in the numerator of the proportionate part fraction. Thus, while member insurers are unquestionably subject to an assessment on all annuity premiums, the mathematical calculation of the available offset of any such annuity, under the unambiguous language of Section 991.1711(b), is zero. Based upon this plain and unambiguous language, we would reverse the order of the Commonwealth Court.[4]

Justices SAYLOR and TODD join this opinion.

during his life time; the proceeds of insurance policies are paid to survivors upon the insured's death. While irrelevant in a plain language analysis, these differences could be why the General Assembly did not include annuities in the subsection (b) defined numerator. Respectfully, the point is that the plain language is our "best indication of legislative intent," and that plain language clearly states that only guaranteed premiums of life, health, and accident insurance shall be included in the subsection (b) numerator.

Assuming that there is error in the clear legislative language, it falls to the legislature to pass an amendment to rectify that error.

4. We further note that the Commonwealth Court declined to dispose of constitutional issues raised by Allstate, instead deciding the appeal on the statutory and non-constitutional grounds discussed herein. Accordingly, we would further remand this appeal to the Commonwealth Court for consideration of any remaining and preserved constitutional claims.