IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Burns and                          :
Svetlana Burns, his wife,                 :
           Petitioners               :
                                                  :
              v.                          :
                                                  :
Department of Human Services,             :      No. 1570 C.D. 2017
              Respondent            :      Argued: May 7, 2018


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION
BY JUDGE FIZZANO CANNON          FILED: July 17, 2018


        Robert Burns and Svetlana Burns (together, Petitioners) petition for review of the October 3, 2017 order of the Department of Human Services, Bureau of Hearings and Appeals (Department), which adopted, in its entirety, the Adjudication and Recommendation of the Administrative Law Judge (ALJ), recommending that Petitioners' appeal be dismissed for lack of jurisdiction. We affirm.

        LD is a male child who was born on September 14, 2016. ALJ's Findings of Fact (F.F.) No. 1. On October 5, 2016, the Allegheny County Office of Children, Youth and Families (OCYF) filed an application for emergency protective custody of LD with the Court of Common Pleas of Allegheny County-Juvenile Division (Court of Common Pleas). F.F. No. 2. The Court of Common Pleas

granted legal custody of LD to OCYF and later determined LD to be a dependent child by order dated November 4, 2016.  F.F. No. 3.  The hospital discharged LD on October 8, 2016, and OCYF placed LD in foster care in Petitioners' home.  F.F. No. 4.  LD remained in Petitioners' foster care for seven months.  F.F. No. 5.  On or about May 12, 2017, the Court of Common Pleas ordered that physical custody of LD remain with Petitioners and that legal custody remain with OCYF, but it also granted OCYF the authority to place LD with a relative by agreement.  F.F. No. 6; Court of Common Pleas 5/12/17 Permanency Review Order (P.R. Order), Supplemental Reproduced Record (S.R.R.) at 5b-6b.  The Court of Common Pleas found that OCYF had been working with the maternal grandmother as a possible placement for LD.  5/12/17 P.R. Order, S.R.R. at 6b.

On May 23, 2017, OCYF removed LD from Petitioners' foster care and placed LD with his maternal grandmother.  F.F. No. 7.  On that same day, Petitioners filed an administrative appeal with the Department challenging the removal of LD and requesting that LD be returned to their foster care.  F.F. No. 8.

Also on May 23, 2017, Petitioners filed two motions with the Court of Common Pleas, a motion to stay removal and a motion to intervene.  *See* F.F. No. 9. The Court of Common Pleas denied the motions, but, on June 2, 2017, held a status review hearing to consider Petitioners' evidence regarding LD's placement.  F.F. No. 10.  On June 2, 2017, the Court of Common Pleas issued an order confirming the placement of LD with his maternal grandmother.  F.F. No. 11.

On May 25, 2017, the Department issued an order to show cause as to why Petitioners' appeal with the Department should not be dismissed for lack of jurisdiction.  F.F. No. 13.  Petitioners responded, arguing that they lacked advance written notice, asserting their right to a due process hearing and reiterating their

2

desire for LD to be placed in their home. F.F. No. 14. On August 22, 2017, the Department conducted an administrative hearing on the issue of its jurisdiction. F.F. No. 15. At all times relevant to the appeal before the Department, the dependency case regarding LD had remained open in the Court of Common Pleas. *See* F.F. No. 12.

On September 11, 2017, the ALJ issued an Adjudication and Recommendation. The ALJ determined that LD's placement was under the jurisdiction of the Court of Common Pleas and that the Department was without authority to issue a contrary order. Adjudication at 4. The ALJ determined that the appeal was prohibited by 55 Pa. Code § 3700.73(a)(2), which provides: "Foster parents may appeal the relocation of a child from the foster family except under one of the following conditions: . . . (2) The removal is initiated by the court. . . ." Adjudication at 4.

With respect to Petitioners' due process argument, the Department acknowledged that it did not issue a written notice to Petitioners 15 days before LD was removed from their foster care. *Id*. at 3. The ALJ noted, however, that the Court of Common Pleas held a hearing on June 2, 2017 for the purpose of addressing Petitioners' argument regarding LD's placement. *Id*. at 3-4. The Court of Common Pleas issued an order following that hearing confirming LD's placement in the home of his maternal grandmother. *Id*. at 4.

Accordingly, the ALJ recommended that Petitioners' appeal be dismissed because the Department lacked jurisdiction and could not grant the relief sought. *Id.*, ALJ's Recommendation. On October 3, 2017, the Department issued its order adopting the ALJ's Adjudication and Recommendation in its entirety and dismissing Petitioners' appeal.

Petitioners now petition this Court for review of the Department's order.[1] OCYF has intervened.[2]

Before we address Petitioners' arguments, we must respond to OCYF's argument that this matter is moot. OCYF states that on December 15, 2017, the Court of Common Pleas entered an order closing LD's dependency case and granting LD's maternal grandmother legal and physical custody of LD. *See* OCYF's Brief at 8; S.R.R. at 10b.

Appellate courts in this Commonwealth will not decide moot questions. *See In re Gross*, 382 A.2d 116, 119 (Pa. 1978). A court will dismiss an appeal as moot unless an actual case or controversy exists at all stages of the judicial or administrative process. *Luzerne Cty. Children & Youth Servs. v. Dep't of Pub. Welfare*, 826 A.2d 84, 86 (Pa. Cmwlth. 2003). "[A] legal question can become moot on appeal as a result of an intervening change in the facts of the case." *See Gross*, 382 A.2d at 119. An issue before the court is moot if, in ruling upon the issue, the court cannot enter an order that has any legal force or effect. *Luzerne Cty.*, 826 A.2d at 86. However, even where an appeal is technically moot, "where the conduct complained of is capable of repetition yet likely to evade review, where the case

---

[1] This Court's review in an appeal from an order of the Department is limited to determining whether constitutional rights were violated, whether any errors of law were committed and whether any necessary factual findings are supported by substantial evidence. *Sanner v. Dep't of Pub. Welfare*, 878 A.2d 947, 951 (Pa. Cmwlth. 2005). The interpretation of a regulation presents a purely legal question; thus, this Court's standard of review is *de novo* and our scope of review is plenary. *See Allstate Life Ins. Co. v. Commonwealth*, 52 A.3d 1077, 1080 (Pa. 2012) (concerning appellate court review involving the interpretation of a statute); *Northumberland Cty. Children & Youth Servs. v. Dep't of Pub. Welfare*, 2 A.3d 794, 799 n.5 (Pa. Cmwlth. 2010) (stating that where a challenge involves a legal question of the proper interpretation of regulations, this Court's review is plenary).

[2] The Department elected not to file a brief.

involves issues important to the public interest or where a party will suffer some detriment without the court's decision," a court may proceed to address the merits of a claim. *Sierra Club v. Pa. Pub. Util. Comm'n*, 702 A.2d 1131, 1134 (Pa. Cmwlth. 1997) (en banc), *aff'd*, 731 A.2d 133 (Pa. 1999).

This case falls within the exception where the conduct complained of is capable of repetition yet likely to evade review. Therefore, we will address the merits.

Petitioners argue that they were denied due process when LD was removed from their care essentially without notice and a meaningful opportunity to be heard and without being afforded the appeal process they claim is guaranteed to them pursuant to 55 Pa. Code § 3700.73.[3] Petitioners argue that the Department erred and abused its discretion in determining that it lacked jurisdiction to hear

---

[3] 55 Pa. Code § 3700.73(a) provides:

> (a) Foster parents may appeal the relocation of a child from the foster family except under one of the following conditions:
>
> (1) The child has been with the foster family less than 6 months.
>
> (2) The removal is initiated by the court.
>
> (3) The removal is to return the child to his parents.
>
> (4) The removal is to place the child for adoption.
>
> (5) An investigation of a report of alleged child abuse indicates the need for protective custody removal to protect the child from further serious physical or mental injury, sexual abuse or serious physical neglect as defined in Chapter 3490 (relating to protective services).

55 Pa. Code § 3700.73(a).

Petitioners' appeal. Petitioners point out that, pursuant to 55 Pa. Code § 3700.73, foster parents may appeal the relocation of a child from the foster home except in five enumerated circumstances; they contend none of those exceptions apply here. The Department, however, ruled that one of the five exceptions applied, in particular, the exception that the removal was initiated by the court per 55 Pa. Code § 3700.73(a)(2). Petitioners disagree and maintain that the Department's determination is against the weight of the evidence because LD's removal from the foster home was "initiated" by OCYF, not the Court of Common Pleas. Petitioners argue that OCYF initiated the request to have LD declared dependent and then, ultimately, to remove LD from the foster home. Petitioners assert that the Court of Common Pleas only responded to OCYF's request to have LD removed upon agreement of the parties.[4]

Petitioners also argue that the Department erred in determining that it lacked jurisdiction because the Court of Common Pleas had jurisdiction with regard to the dependency of LD and could not grant the relief sought. Petitioners maintain that foster parents come into existence only because a court of common pleas has jurisdiction and, pursuant to that jurisdiction, has found a child to be dependent. Petitioners' Brief at 12. Petitioners argue that all five exceptions under 55 Pa. Code § 3700.73 presume the Court of Common Pleas already has jurisdiction.[5] Petitioners

_____

[4] Petitioners point out that the Court of Common Pleas stated in an order dated June 21, 2017 that "the problems displayed by the child were the result of [O]CYF's hasty decision to place [LD] with Maternal Grandmother …[,]" and argue this statement shows that OCYF initiated the removal. Petitioners' Brief at 16-17; App. B., Court of Common Pleas Status Review Order at 2. OCYF's determination that LD should be placed with the grandmother is not dispositive and, as will be explained, does not mean that OCYF initiated the removal.

[5] Petitioners argue that the Department misinterpreted 55 Pa. Code § 3700.73, because the Department stated, "[t]his case falls within one of the exceptions listed in 55 Pa. Code § 3700.73(a)

6

maintain that Chapter 37 of Title 55 of the Pennsylvania Code is derived from the Juvenile Act[6] so the concurrent jurisdiction was known and contemplated when the appeal procedure in the Pennsylvania Code was written. Petitioners point out that the "agreement" did not involve them because they lacked standing in the Court of Common Pleas to participate as a party.[7] Petitioners argue, therefore, that the reasoning applied by the Department effectively eliminates all appeals by foster parents.

### *Juvenile Act*

The provisions of the Juvenile Act apply to proceedings in which a child is alleged to be dependent. *Sanner v. Dep't of Pub. Welfare*, 878 A.2d 947, 952 (Pa. Cmwlth. 2005); *see* 42 Pa. C.S. § 6303(a)(1). "The [Juvenile] Act also clearly envisions the continuing supervision over a dependent child, and one alleged

_____

barring the instant appeal because the current placement of LD is under the jurisdiction of the [Court of Common Pleas]." Petitioners' Brief at 8 (citing Adjudication at 2). Petitioners point out that none of the five exceptions to the Department's jurisdiction enumerated in 55 Pa. Code § 3700.73(a) excludes instances where a dependency case is "under the jurisdiction" of a court of common pleas. Petitioners' Brief at 8-9. We agree that there is no such exception enumerated. *See* 55 Pa. Code § 3700.73(a). In its Adjudication, the Department cited 55 Pa. Code § 3700.73(a)(2) (concerning a removal initiated by the court) and also discussed the Court of Common Pleas' jurisdiction. While the Department may have conflated the two concepts, the Department's reasoning, regarding its lack of authority to modify a plan approved by the Court of Common Pleas, and result are correct, as will be discussed.

[6] 42 Pa. C.S. §§ 6301-6375.

[7] Petitioners' Brief at 18; *see* 42 Pa. C.S. § 6336.1(a) (stating that the court of common pleas shall provide to the child's foster parent notice and an opportunity to be heard at any hearing conducted under the Juvenile Act but that such does not give the foster parent legal standing in the matter being heard by the court); *In re G.C.*, 735 A.2d 1226, 1228 (Pa. 1999) (stating that foster parents lack standing in custody proceedings); *In re J.F.*, 27 A.3d 1017, 1021 (Pa. Super. 2011) (stating that the Juvenile Act is clear that the foster parent does not have standing to participate as a party in the dependency proceeding).

to be dependent, until the court concludes the child is no longer dependent." *Sanner*, 878 A.2d at 952 (citing 42 Pa. C.S. § 6351). "'The [court of common pleas] Juvenile Court maintains a **continuing plenary jurisdiction** in dependency cases . . . and has the power to review the circumstances of dependent juveniles . . . .'" *In re R.P.*, 956 A.2d 449, 456 (Pa. Super. 2008) (emphasis in original) (quoting *In re Tameka M.*, 580 A.2d 750, 752 (Pa. 1990)). The Department "has no authority or jurisdiction to alter services that a supervising common pleas court has dictated as a result of reviewing allegations of, or a finding of, dependency." *Sanner*, 878 A.2d at 952.[8] Where a court of common pleas approves the provisions of a plan in its order, the Department has no power to modify those terms. *Id.* at 953; *see also Luzerne Cty.*, 826 A.2d at 86 (stating that "jurisdiction over disputes regarding adoption, custody and the placement of dependent children is vested in the courts of common pleas[]" and that the Department "has no authority to modify a term of a service plan which has been specifically approved and ordered by a court of competent jurisdiction[]").[9]

Here, the Court of Common Pleas adjudicated LD dependent. *See* F.F. No. 3 (stating the Court of Common Pleas granted legal custody of LD to OCYF).

---

[8] We acknowledge that *Sanner* addressed therapy services rather than the placement of the child. *Sanner*, 878 A.2d at 949. Nonetheless, *Sanner* is applicable, because it involved a family service plan and the placement here was also part of a service plan.

An agency must prepare a service plan for all families receiving services. *See* 55 Pa. Code § 3130.61(a). The service plan must include service objectives for the family. 55 Pa. Code § 3130.61(b)(3). Placement planning is part of the plan/service objective for those children who are placed outside of their family. *See* 55 Pa. Code § 3130.61(b)(6)-(7) (concerning placement amendments and results of placement reviews) & 55 Pa. Code § 3130.67 (relating to placement planning).

[9] Although *Luzerne County* dealt with an adoption, that fact is not enough to distinguish the case because all adjudicated dependents have a plan subject to periodic review by a court of common pleas until the court concludes the child is no longer dependent. *See* 42 Pa. C.S. § 6351(e)(3) (regarding timing for conducting permanency hearings); *Sanner*.

The Court of Common Pleas further ordered that OCYF had permission to place LD with a relative by agreement and, by subsequent order, confirmed LD's placement with the maternal grandmother. *See* F.F. Nos. 6 & 11. Thus, the Department had no authority to modify the terms of LD's plan that had been approved by the Court of Common Pleas. *See Sanner*, *Luzerne Cty.*.

Nonetheless, Petitioners argue they have a right to an administrative appeal with the Department. In support of their argument, Petitioners rely on *In re G.C.*, 735 A.2d 1226 (Pa. 1999), quoting our Supreme Court's statement that it "wish[ed] to point out that the Legislature has specifically provided foster parents with the right to administratively appeal the relocation of their foster children." *Id.* at 1231. Petitioners contend, therefore, that "the Pennsylvania Supreme Court has recognized the right of foster parents to appeal in the within context[,]" and they seek the relief that the Supreme Court confirmed for them. Petitioners' Brief at 19.

*G.C.* is not controlling, however, as any statements about 55 Pa. Code § 3700.73 were dicta. In that case, the issue was whether the foster parents had standing in the court of common pleas to seek or contest custody of their foster child. *G.C.*, 735 A.2d at 1232. After concluding that the foster parents lacked standing, the Supreme Court made the statement above and then simply quoted 55 Pa. Code § 3700.73. The Supreme Court did not engage in an analysis of 55 Pa. Code § 3700.73 or any of its particular provisions. We will do so now.

### 55 Pa. Code § 3700.73(a)

At issue is the interpretation of 55 Pa. Code § 3700.73(a), which provides in relevant part: "Foster parents may appeal the relocation of a child from the foster family except under one of the following conditions: . . . (2) The removal

9

is initiated by the court." 55 Pa. Code § 3700.73(a)(2). Specifically at issue is when is a removal "initiated by the court[,]" and, in particular, what is the meaning of the word "initiated."

Chapter 37 of Title 55 of the Pennsylvania Code does not define the term "initiate." Therefore, we must resort to its common and approved usage. Section 1903 of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1903. The word "initiate" is defined as: "To begin or set going : make a beginning of : perform or facilitate the first actions, steps, or stages of." Webster's Third New International Dictionary 1164 (2002).

We note that prior to July 1, 2011, "the county agency was not obligated by statute or rule to obtain judicial permission prior to modifying a dependent child's placement." *In re J.F.*, 27 A.3d 1017, 1020 (Pa. Super. 2011). However, on July 1, 2011, Pennsylvania Rule of Juvenile Court Procedure 1606 became effective, and that rule requires the county agency to seek court permission prior to a change in placement, except in an emergency when a judge cannot be reached. *See* Pa.R.J.C.P. 1606(A)(2) (stating that in non-emergent cases, "the county agency shall seek approval of the court for a change in the child's placement prior to the removal of the child from the placement by the filing of a motion or a stipulation for modification of the dispositional order"). Even in emergency situations, however, the county agency must file a motion by the next business day following the child's placement. Pa.R.J.C.P. 1606(A)(1)(c). The regulation at issue here, 55 Pa. Code § 3700.73, was in effect prior to the adoption of Pennsylvania Rule of Juvenile Court Procedure 1606. *See* 12 Pa.B. 3669-71, 3676 (Oct. 9, 1982) (promulgating regulations effective October 1, 1982); 17 Pa.B. 392, 406 (Jan. 24, 1987) (amending 55 Pa. Code § 3700.73 effective January 24, 1987). Thus, up to the effective date of

10

Pennsylvania Rule of Juvenile Court Procedure 1606, there were circumstances where a child's relocation from foster parent care could have occurred without court initiation. However, as of July 1, 2011, the county agency is required to seek permission from the court for a change in placement. *See* Pa.R.J.C.P. 1606.

Here, LD's removal from the foster home did not occur until the Court of Common Pleas issued its order. The fact that the idea to remove LD from the foster home came from someone other than the Court of Common Pleas or by agreement of the parties does not mean that the actual removal was initiated by OCYF. While OCYF might have initiated the dependency proceedings that ultimately resulted in LD's placement and the subsequent removal from Petitioners' home, the actual removal could not begin, or could not be "initiated," until the Court of Common Pleas issued its order.

We also find this Court's decision in *Newberry v. Department of Public Welfare* (Pa. Cmwlth., No. 1976 C.D. 2009, filed July 14, 2010), to be persuasive.[10] In that case, the court of common pleas ordered children and youth services (CYS) to remove the foster child from the foster home. *Id*., slip op. at 1-2. The foster parent filed an appeal with the Department challenging the removal. *Id*. at 2. CYS filed a motion to dismiss the appeal for lack of standing, relying on 55 Pa. Code § 3700.73 and stating that the court of common pleas order controlled the matter. *Id*. at 2. The Department granted the motion and dismissed the appeal for lack of jurisdiction, stating that the court of common pleas had assumed jurisdiction by initiating the removal of the child from the foster home. *Id*. Before this Court, the foster parent

---

[10] While this Court's unreported memorandum opinions may not be cited as binding precedent, they may be cited for persuasive value. Commonwealth Court Internal Operating Procedure § 414(a), 210 Pa. Code § 69.414(a).

argued that the exceptions to the foster parent's right to file an appeal under 55 Pa. Code § 3700.73(a) were not applicable, in particular, because "the removal was *not* initiated by the court, but by a CYS employee . . . ."[11] This Court disagreed and affirmed the Department. *Newberry*, slip op. at 4.

Accordingly, we conclude that LD's removal was "initiated" by the Court of Common Pleas. Therefore, the removal falls within the exception in subsection (a)(2) of 55 Pa. Code § 3700.73, and consequently, Petitioners are not entitled to file an appeal of LD's relocation with the Department. *See* 55 Pa. Code § 3700.73(a)(2).

Lastly, we address Petitioners' argument that they did not receive timely written notice of the removal and that LD should have remained with them pending their appeal. 55 Pa. Code § 3700.73(b) provides that the agency (OCYF) "shall inform foster parents in writing that they may appeal the relocation of a child in accordance with subsection (a) at least 15 days prior to the relocation of the child." The Department admitted that it did not give Petitioners 15 days' written notice. *See* Adjudication at 3. However, as discussed above, Petitioners were not entitled to appeal the relocation of LD in accordance with subsection (a) of 55 Pa. Code § 3700.73. Consequently, OCYF was not required to give Petitioners 15 days' written notice, nor were Petitioners entitled to have LD remain with them pending their improper appeal. *See Martz v. Dep't of Pub. Welfare, Adams Cty. Child & Youth Servs.*, 536 A.2d 496, 497 (Pa. Cmwlth. 1988) (stating that it is only where the foster parent has a right to appeal the relocation of the child that the child must remain in the foster home pending a decision on appeal).

---

[11] Petitioner's brief in *Newberry v. Dep't of Pub. Welfare* (Pa. Cmwlth., No. 1976 C.D. 2009), available at 2010 WL 4735789 at *6 (emphasis in original).

Accordingly, for the foregoing reasons, we affirm the Department's order dismissing Petitioners' appeal for lack of jurisdiction.

_____
CHRISTINE FIZZANO CANNON, Judge

Judge McCullough did not participate in the decision of this case

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Burns and :
Svetlana Burns, his wife, :
               Petitioners :
                :
          v. :
                :
Department of Human Services, : No. 1570 C.D. 2017
               Respondent :

## O R D E R

AND NOW, this 17th day of July, 2018, the October 3, 2017 order of the Department of Human Services, Bureau of Hearings and Appeals, is AFFIRMED.

 

_____
CHRISTINE FIZZANO CANNON, Judge