# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| In re: Petitions to Open Ballot Box Pursuant to 25 P.S. §3261(A) and for a Correct Count of the General Election | :<br>:<br>: No. 237 C.D. 2023<br>: Argued: April 5, 2023<br>: |
| Appeal of: Steven C. Dawson, Larry Aitken, Daniel G. Berrien, Candace Chrystel Biafore, Jessica D. Briggs, Carole Browne, Patrice Bumba, Christine Callaghan, Barbara Canete, Sharon Clancy, James J. Del Rio, Jr., Elizabeth Diehl, Lorraine Doan, Lindsay Emigh, William Patrick Everett, Joseph Favoroso, Rosalie Flemke, Debra Frei, Frances Grous, Warren H. Harner, Jr., Christine I. Heitman, Timothy Hellings, Stephanie Inselberg, Laura M. Mack, Martha McDonald, Joe Mitchener, Erika Montero, Patricia H. Murray, Mary Josephine O'Connor, Karin Lee Rohrer, Robert Ruidiger, Melissa Smith, Natalie Smith, Khristi L. Stoll, Marla R. Stoll, Audrey Strein, Todd Walbridge, Peter David Yodis, Lori Zaro, Christina Cook, Maria Bates, Joseph Farrell, Nicholas Grauber, Max Lihui Jin, Sharon Walbridge, Roland A. Flemke, Michelle Pezzeca, Klaus Heitman, Joseph McGinty, Kevin Hirst, Mary Ann Hirst, Sharon Brooks, Therese Marshall, Brian Land, Avery Strein, William A. Capaldi, Glenn T. Garwood, Beth Roth, John Smith, Rebecca J. Belmont, Carolyn Dominski Everett, Joseph Montero, Noah Montero, Shane L. Fogleman, Sara I. Hunt, Laurie Katz, Leeann Levin, Fred Allen Miller, Marilyn L. Miller, Allison M. Beard, Nancy Kathleen Cuozzo, Andrea Carr, | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

Rosemary B. Carr, Christopher          :
Domanico, Keun Su Lee, John P.         :
Brown, Robert J. Secor, Linda Ann      :
Haywood, Kim D. Starkey, Shannon       :
Okane Harris, Michael Leigh Moffs      :
Walson, Joseph M. Priest, Margo K.     :
Priest, Harry Payne Martin, Nancy      :
Tegano, Susan W. Oliver, Leslie Mae    :
Yodis, Tracy W. Bailey, James Lowell   :
Mack, Laura Kate Tressler, Timothy M.  :
Tressler, John A. Lang, Allison E.     :
Zimmer, Barbara Vees, Anthony          :
Wilwert, Steen Matusz, Christopher     :
Zaro, Brad Frapwell, Brooke Frapwell,  :
Robert Rosarto, Deborah Tyrrell,       :
Richard Kuzman, Mary Walchonski,       :
Brendan Gorman, Mary Elizabeth         :
Gorman, Patricia Nolan, Charles        :
Russo, Linda Ziff, Robert Ziff, Vickie :
Lupisella, and Ellen Messing           :


**BEFORE:     HONORABLE MICHAEL H. WOJCIK, Judge**
**            HONORABLE CHRISTINE FIZZANO CANNON, Judge**
**            HONORABLE STACY WALLACE, Judge**

**OPINION NOT REPORTED**

**MEMORANDUM OPINION**
**BY JUDGE WALLACE**                          **FILED:  May 9, 2023**


The cornerstones of our Commonwealth and our Country are fair and honest elections.  Unfortunately, however, many face a crisis of confidence in our electoral system.  Candidates must do more than earn votes; they must persuade people their votes count.  With this in mind, the Court concludes affirming the Court of Common Pleas of Bucks County (Common Pleas) is both legally correct and the result most

2

consistent with promoting integrity of the Commonwealth's elections. We explain our reasoning below.

This case involves a group of electors residing in Bucks County (Petitioners) who, initially proceeding pro se, filed 38 petitions to open ballot boxes in Common Pleas between November 16, 2022, and December 12, 2022. Common Pleas denied the petitions by order dated March 3, 2023. Petitioners have now appealed, arguing primarily that Common Pleas erred as a matter of law by concluding their petitions failed to comply with limitations found in Section 1703 of the Pennsylvania Election Code (Election Code), Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. § 3263.

Earlier this year, the Court issued two single-judge decisions, which reached diametrically opposed conclusions on this issue. First, we decided *In re: Recount of Berks County General Election of November 8, 2022* (Pa. Cmwlth., Nos. 1426-1427 C.D. 2022, filed January 31, 2023) (*Berks County*). The *Berks County* opinion interpreted Section 1703 to impose limitations on petitions to open ballot boxes, and Common Pleas relied on the *Berks County* opinion when deciding this case. Second, we decided *In re: Petition to Open Ballot Box Pursuant to 25 P.S. § 3261(a)* (Pa. Cmwlth., Nos. 1489-1494 C.D. 2022, filed February 10, 2023) (*Chester County*). The *Chester County* opinion concluded the limitations found in Section 1703 applied only to subsequent petitions to open ballot boxes filed if an initial petition uncovers fraud or error.

After careful review, we agree with Common Pleas' interpretation of the Election Code. Petitioners needed to (1) file their petitions to open ballot boxes as to each election district in which ballots were cast for the offices in question or (2) plead and offer prima facie evidence that a particular act of fraud or error occurred.

3

As Petitioners did not satisfy either of these requirements, they were not entitled to their requested recount of ballots.

## I. Background

In their petitions to open ballot boxes, Petitioners generally requested recounts of votes cast during the November 8, 2022 General Election for either the offices of Governor and Lieutenant Governor or for a list of offices, including Governor and Lieutenant Governor, United States Senator, United States Representative, State Senator, and State Representative. Three Petitioners filed each petition, requesting a recount in a particular election district. The petitions corresponded to 36 Bucks County election districts in all.

In support of the recounts, Petitioners relied on Section 1701 of the Election Code, 25 P.S. § 3261. They averred: "To the best of Petitioners' information and belief, fraud or error, although not manifest on the general return of votes, was committed in the computation of votes cast, or in the marking of ballots, or otherwise in connection with said ballots . . . ." Pet. ¶ 5.[1] Petitioners requested that a recount be conducted by hand "and that no machines be employed, so that machine related errors can be detected." *Id.* ¶ 7. Finally, Petitioners averred they had timely filed their petitions within five days of completion of the computational canvassing of all county returns and deposited the required sum of $50. *Id.* ¶¶ 8-9.

The Bucks County Board of Elections (Board) filed preliminary objections on December 8, 2022. The Board argued the petitions did not meet the requirements of Section 1703. Specifically, the Board argued Petitioners did not present prima facie evidence of a particular act of fraud or error in their petitions. Mem. of Law in Supp.

---

[1] The petitions were later consolidated under a single docket number, 2022-05865, as summarized below. For ease of reference, when we cite a document or version of a document initially filed at multiple docket numbers, we cite the document or version of the document filed at the lead docket number.

of Prelim. Objs. at 3. According to the Board, Section 1703 required Petitioners to either present evidence or file petitions as to every election district in which ballots were cast for the offices in question, accompanied by a cash payment or bond for each district. *Id.* Because Petitioners were requesting recounts of countywide and statewide elections, they would need to present evidence or file petitions as to the 304 election districts in Bucks County and 9,178 election districts in the Commonwealth of Pennsylvania, including Bucks County. *Id.*; Prelim. Objs. ¶¶ 9-10, 23. Accepting in the alternative that the petitions were sufficient, the Board argued Petitioners were not entitled to a hand recount. The Board maintained any recount should proceed under Section 1404(e)(3)(i) of the Election Code, 25 P.S. § 3154(e)(3)(i), which generally directs county boards to "recount all ballots using manual, mechanical or electronic devices of a different type used for the specific election."[2]

Significantly, under Section 302(k) of the Election Code, 25 P.S. § 2642(k), a county board of elections must certify its results "no later than the third Monday following the primary or election." Because of the pending petitions in this case, the Board was unable to comply with Section 302(k). *See* 25 P.S. § 3154(f) ("At the expiration of five (5) days after the completion of the computation of votes, in case no petition for a recount or recanvass has been filed . . . the county board shall certify the returns . . . ."). On December 13, 2022, counsel entered his appearance on behalf of Petitioners. Following a conference, and with agreement of the parties, Common

---

[2] The Board also included other challenges in its preliminary objections, which are not relevant to our disposition of this appeal. Briefly, the Board argued that certain petitions were untimely, were not served on the Board, and did not include the signatures of all three relevant Petitioners. Mem. of Law in Supp. of Prelim. Objs. at 3-5. The Board further argued some of the Petitioners alleging fraud or error in the petitions served as election officials on November 8, 2022, and did not report fraud or error at that time. *Id.* at 5-6. Thus, the Board contended those Petitioners should be equitably estopped from alleging fraud or error in a petition under Section 1701. *Id.*

Pleas entered an order dated December 14, 2022, permitting the Board to certify its results. The order directed counsel for Petitioners to file for consolidation of the petitions and submit a memorandum of law responding to the Board's preliminary objections. In addition, the order directed the parties to cooperate in the preparation of a stipulation of facts. The parties filed joint stipulations of consolidation and of facts on December 23, 2022. Common Pleas granted consolidation and accepted the stipulation of facts by orders dated December 30, 2022.

Petitioners filed a memorandum opposing the Board's preliminary objections on January 10, 2023. Petitioners argued the Board lacked standing to contest their petitions, as the Election Code "does not contemplate . . . an opposing party" to a proceeding to open ballot boxes. Mem. in Opp'n to Prelim. Objs. at 4. They argued the Board had no legal interest in the proceedings, as its role was merely to surrender the ballot box to Common Pleas to be recounted. *Id.* at 9. Moreover, Petitioners challenged the Board's interpretation of Section 1703. Petitioners contended the limitations found in Section 1703 applied only when a petition under Section 1701 uncovered fraud or error, and the interested parties sought to open additional ballot boxes. *Id.* at 11-12. They maintained the Board's interpretation would effectively read Section 1701 out of the Election Code. *Id.* at 12. Petitioners requested any recount should proceed by hand, citing Section 1701(a)'s language that recounts be conducted "by persons" and Section 1404(e)(3)(i)'s language that recounts may be conducted manually. *Id.* at 15-18 (quoting 25 P.S. §§ 3154(e)(3)(i), 3261(a)).[3]

---

[3] Petitioners contended they should not be estopped from filing petitions if they served as election officials, because they were not involved with the tabulation of ballots, their concerns of fraud or error did not involve their function as election officials, or they did not become aware of the information supporting their concerns until after the November 8, 2022 General Election. Mem. in Opp'n to Prelim. Objs. at 13-14.

Petitioners also filed, on January 10, 2023, a motion to amend their recount petitions and for discovery. While not waiving the argument they were not required to present evidence of fraud or error, Petitioners averred they discovered information after the November 8, 2022 General Election, which they considered reliable and supported their concerns. Mot. to Amend at 1. Petitioners alleged over 12,000 registered voters had moved out of Pennsylvania, and "13 voters [] were deceased at the time of the election. *Id.* at 2-4. They further alleged various improprieties with respect to mail-in and absentee ballots, such as 462 instances where the Board indicated in its records that electors returned voted ballots before receiving a ballot in the mail. *Id.* at 3. Petitioners sought leave to amend their petitions to add averments containing this information. *Id.* at 4-6. They requested discovery as well, including documents and the deposition of the Bucks County Director of Elections, which they maintained was necessary in response to the Board's preliminary objections. *Id.* at 7.

The Board filed an answer to the motion to amend, and a motion to dismiss, on January 25, 2023. The Board argued Petitioners waived any challenge based on voter registrations, as registrations are subject to challenge under 25 Pa.C.S. § 1509, and the deadline for proceeding under that section had already passed. Answer ¶ 1a-b.[4] Responding to Petitioners' concerns more directly, the Board argued electors may move out of Pennsylvania temporarily while maintaining their voter registration for reasons such as engaging in military service or attending college. *Id.* (citing 25 Pa.C.S. §§ 1302, 1506(f)).

---

[4] *See* 25 Pa.C.S. § 1509(a) (permitting petitions to cancel or suspend a registration "[a]t any time not later than the tenth day preceding an election").

The Board similarly contended the correct means of challenging a mail-in or absentee ballot was to proceed under Section 1308 of the Election Code, added by Section 11 of the Act of March 6, 1951, P.L. 3, 25 P.S. § 3146.8, but the deadline for invoking that section had also already passed. Answer ¶ 1c-e.[5] The Board contended the alleged improprieties Petitioners identified regarding mail-in or absentee ballots were a misunderstanding. *Id.* The Board conceded that 13 voters submitted mail-in or absentee ballots and later died but averred it did not receive word of the deaths in time to cancel their ballots. *Id.* ¶ 1e. Regarding the allegation that electors began returning mail-in or absentee ballots before receiving them, the Board asserted this was the result of administrative issues associated with mailing a large batch of 50,000 ballots to voters at once. *Id.* ¶ 1d. The Board asserted it did not receive word from its mail house that any of the ballots were sent, and therefore could not update its records, until all the ballots were sent, a process which took nearly a week. *Id.* The Board noted the concerns Petitioners raised, even if they were indicative of fraud or error, would not result in a different computation of votes after a recount. *Id.* ¶ 1c-e. Ultimately, the Board denied Petitioners were entitled to discovery and asked Common Pleas to dismiss their petitions, contending once again they failed to satisfy the requirements of Section 1703. *Id.* ¶ 5-16. The Board added the matter was moot, as the election results were certified, and the successful candidates were sworn into office. *Id.* ¶ 22.

Common Pleas held argument on February 9, 2023, during which the parties essentially raised the points summarized above. Counsel for Petitioners conceded a recount would not confirm or refute their concerns, nor would it overturn the results

---

[5] *See* 25 P.S. § 3146.8(f) (requiring any person challenging an absentee or mail-in ballot to deposit $10 with the county election board, which "shall only be refunded if the challenge is sustained or if the challenge is withdrawn within five (5) days after the primary or election").

of the November 8, 2022 General Election, as "[t]here's no possibility of segregating those kinds of improper votes from the pack of votes." Notes of Testimony, 2/9/23, at 87, 97, 112, 152-57. Counsel indicated Petitioners' intent was not to change the results of the election but to use the recount as a method of investigating election integrity and preventing problems from occurring in future elections. *Id.* at 87-88, 127, 152-57. He explained: "[T]his is not an accusatorial process. This is more like an . . . exploratory operation maybe, we don't want the patient to die because we didn't catch the disease." *Id.* at 127

Following argument, Common Pleas denied the petitions to open ballot boxes by order dated March 3, 2023. Common Pleas issued an accompanying opinion, in which it first addressed the Board's standing. Common Pleas concluded the Board possessed standing as an agency statutorily required to oversee elections. Common Pleas Op. at 6-7. Common Pleas compared the Board to other administrative bodies that participate in appeals, such as zoning hearing boards, and cited case law the Board provided as persuasive. *Id.* (citing *Pa. Game Comm'n v. Dep't of Env't Res.*, 555 A.2d 812 (Pa. 1989); *In re Expungements*, 938 A.2d 1075 (Pa. Super. 2007)).

Common Pleas then turned its attention to the requirements of Sections 1701 and 1703. Common Pleas acknowledged the conflict between this Court's decisions in *Berks County* and *Chester County*. *Id.* at 14-15. Notably, this Court decided *Berks County* on January 31, 2023, just over a week before Common Pleas heard argument on the petitions to open ballot boxes. The Court decided *Chester County* the day after Common Pleas heard argument, on February 10, 2023. Common Pleas adopted *Berks County's* analysis, explaining Petitioners did not comply with Section 1703, which required them to file their recount petitions as to each election district in which ballots were cast for the offices in question or plead and offer prima facie

9

evidence that a particular act of fraud or error occurred. *Id.* at 19-20. Common Pleas concluded Petitioners did not file their petitions as to each election district and did not plead fraud or error. *Id.* at 20.

In reaching this conclusion, Common Pleas addressed Petitioners' motion to amend their petitions, reasoning a recount would be "inappropriate and inapplicable to the concerns" the motion raised. *Id.* at 20. Common Pleas interpreted a recount under Section 1701 as applying specifically to allegations of fraud or error that might affect vote totals in an election. *Id.* at 19-20. Common Pleas discussed Petitioners' concerns regarding individuals registered to vote in Bucks County who appeared to have moved away or died. It reasoned the proper means of addressing such concerns was through a challenge to those individuals' registrations, rather than a recount. *Id.* at 15-16 (citing 25 Pa.C.S. § 1509). Similarly, Common Pleas discussed Petitioners' concerns regarding alleged irregularities with mail-in and absentee ballots, reasoning the proper means of raising these concerns was through a challenge to the ballots under Section 1308. *Id.* at 18 (citing 25 P.S. § 3146.8). Common Pleas emphasized the futility of pursuing either of these concerns through a recount under Sections 1701 and 1703 because it would be impossible to separate allegedly problematic ballots from those that were not problematic. *Id.* at 17-19. Thus, as Petitioners' counsel had conceded, Petitioners' concerns had no chance of affecting the vote totals in the election, even if they were entirely accurate. *Id.* at 19.[6]

---

[6] Common Pleas also addressed whether Petitioners properly served, or were required to serve, their petitions on interested parties and whether the petitions were timely filed. Common Pleas Op. at 11. Common Pleas declined to reach a conclusion on these points, reasoning the parties had stipulated the litigation would not affect the certification of the November 8, 2022 General Election, and any conclusion would be unnecessary given its overall disposition of the case. *Id.* at 11-13. Common Pleas nonetheless advised that future petitioners should promptly serve their petitions as a fundamental procedural due process requirement. *Id.* at 13-14.

Petitioners timely appealed. Common Pleas directed Petitioners, by order dated March 8, 2023, to file a concise statement of errors complained of on appeal within 21 days. Subsequently, by order dated March 15, 2023, this Court directed Common Pleas to submit an opinion in support of its decision no later than March 20, 2023, and explained certification of the original record would not be delayed by proceeding under Pa.R.A.P. 1925(b), governing the filing and service of concise statements. Common Pleas issued a brief opinion, which relied on its prior opinion of March 3, 2023, as explanation for its decision.

## II. Mootness

Preliminarily, we must address whether Petitioners' appeal is moot due to the certification of the November 8, 2022 General Election. This Court has explained an actual case or controversy must exist at all stages of the judicial or administrative process. *Kupershmidt v. Wild Acres Lakes Prop. Owners' Ass'n*, 143 A.3d 1057, 1061 (Pa. Cmwlth. 2016) (quoting *Consol Pa. Coal Co., LLC v. Dep't of Env't Prot.*, 129 A.3d 28, 38 (Pa. Cmwlth. 2015)). "An issue before the court is moot if, in ruling upon the issue, the court cannot enter an order that has any legal force or effect." *Burns v. Dep't of Hum. Servs.*, 190 A.3d 758, 761 (Pa. Cmwlth. 2018) (citing *Luzerne Cnty. Child. & Youth Servs. v. Dep't of Pub. Welfare*, 826 A.2d 84, 86 (Pa. Cmwlth. 2003)).

This appeal is arguably moot as, even if we were to reverse Common Pleas' order, Petitioners consented to the certification of Buck County's election results. Petitioners have conceded a recount would not confirm or refute their concerns, nor would it overturn those results. An exception exists that allows this Court to address moot questions, however, when they are of great public importance. *Pilchesky v. Lackawanna Cnty.*, 88 A.3d 954, 964 (Pa. 2014) (citing *Rendell v. Pa. State Ethics*

11

*Comm'n*, 983 A.2d 708, 719 (Pa. 2009)). Resolving confusion regarding the correct interpretation of Sections 1701 and 1703 falls under this exception. This is at least the third appeal involving Sections 1701 and 1703 the Court has decided in 2023 so far. Similar petitions to open ballot boxes have been filed across the Commonwealth. Because these petitions may continue to arise, it is essential to clarify the necessary requirements, so everyone involved can resolve allegations of election fraud or error quickly and correctly. The need is particularly pressing now, with the 2023 Primary Election fast approaching. Therefore, we conclude mootness does not prevent us from reaching the merits of Petitioners' issues.

### III. Issues on appeal

On appeal, Petitioners contend (1) the Board did not have standing to file preliminary objections to their petitions, (2) Common Pleas erroneously interpreted Sections 1701 and 1703,[7] and (3) they have established the facts and circumstances of this case warrant the requested recount be conducted by hand. *See* Petitioners' Br. at 4.

### IV. Standing

We begin by addressing whether the Board had standing to file preliminary objections to the recount petitions. Issues of standing are questions of law for which our standard of review is de novo and scope of review is plenary. *C.G. v. J.H.*, 193 A.3d 891, 898 (Pa. 2018) (citing *K.W. v. S.L.*, 157 A.3d 498, 504 (Pa. Super. 2017)). This means we do not defer to Common Pleas when reaching a decision and review the entire record on appeal. *Mercury Trucking, Inc. v. Pa. Pub. Util. Comm'n*, 55

---

[7] Petitioners do not challenge Common Pleas' conclusion that the concerns they sought to raise in their motion to amend are not allegations of fraud or error appropriate to a recount proceeding, as a recount would not be able to confirm or refute those concerns. Accordingly, we focus our review on the correct requirements of the Election Code and not on whether Petitioners' concerns satisfied those requirements.

12

A.3d 1056, 1082 (Pa. 2012) (citing *Heath v. Workers' Comp. Appeal Bd. (Pa. Bd. of Prob. & Parole)*, 860 A.2d 25, 29 n.2 (Pa. 2004)).

A prospective party obtains standing either by statute or by having an interest deserving of legal protection. *Unified Sportsmen of Pa. v. Pa. Game Comm'n*, 903 A.2d 117, 122 (Pa. Cmwlth. 2006) (citing *Pa. Game Comm'n*, 555 A.2d 812). To obtain standing under the latter method, a prospective party's interest in the outcome of an action must generally be substantial, direct, and immediate. *See id.* at 123; *Lawless v. Jubelirer*, 789 A.2d 820, 826 (Pa. Cmwlth. 2002) (en banc) (citing *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269 (Pa. 1975) (plurality)). "An interest is substantial if there is a discernable adverse effect to an interest other than that of the general citizenry. It is direct if the petitioner can show a harm to his interest. It is immediate if it is not a remote consequence of the judgment." *Lawless*, 789 A.2d at 826 (citations omitted).

In arguing the Board lacked standing in this matter, Petitioners do not address the substantial, direct, and immediate interest requirements listed above. Instead, they reiterate their contention below that the Election Code "does not contemplate . . . an opposing party" to a proceeding to open ballot boxes. Petitioners' Br. at 17. Petitioners contend the Board "is not a defendant in a civil action in these [p]etitions but is the governmental body [that] must carry out the election laws of Pennsylvania in Bucks County." *Id.*

Contrary to Petitioners' contention, the Board's status as the entity carrying out election laws is exactly what confers standing under these circumstances. As observed above, it was the Board's duty to certify the results of the November 8, 2022 General Election "no later than the third Monday" thereafter, which would have been November 28, 2022. *See* 25 P.S. § 2642(k). Because of the petitions to

13

open ballot boxes, the Board was unable to comply with this statutory duty until Common Pleas entered its order dated December 14, 2022. *See* 25 P.S. § 3154(f). Furthermore, the Election Code requires the Board to conduct any recount resulting from the petitions. *See* 25 P.S. § 3154(e)(3)(i) ("The county board shall recount all ballots using manual, mechanical or electronic devices of a different type used for the specific election."). The Board's interests in this litigation are distinct from the general citizenry. *See Lawless*, 789 A.2d at 826. This litigation has also "harmed" the Board's interests and may continue to cause harm if it requires the Board to conduct a recount contrary to the mandates of the Election Code. *Id.* The harm has not been, and would not be, a remote consequence of the proceedings. *Id.* Thus, the Board possessed standing to challenge the petitions.

## V. Sections 1701 and 1703 of the Election Code

In their next issue, Petitioners contend Common Pleas erroneously interpreted Sections 1701 and 1703. This is an issue of statutory construction, for which, once again, our standard of review is de novo, and our scope of review is plenary. *In re Benkoski*, 943 A.2d 212, 215 n.2 (Pa. 2007) (citing *In re Carroll*, 896 A.2d 566, 573 (Pa. 2006)). "The object of statutory construction is to ascertain and effectuate the General Assembly's intent. The plain language of a statute is, as a general rule, the best indicator of such legislative intent." *Id.* at 1067-68 (citing *Bd. of Revision of Taxes, City of Phila. v. City of Phila.*, 4 A.3d 610, 622 (Pa. 2010)).

Petitioners contend it was not necessary to file their petitions to open ballot boxes as to each election district in which ballots were cast for the offices in question or to plead and offer prima facie evidence that a particular act of fraud or error occurred. They rely on Section 1701(a), which provides as follows:

> (a) . . . [T]he court of common pleas, or a judge thereof, of the county in which any election district is located in which ballots were used, shall

14

open the ballot box of such election district used at any general, municipal, special or primary election held therein, and cause the entire vote thereof to be correctly counted by persons designated by such court or judge, if three qualified electors of the election district shall file, as hereinafter provided, a petition duly verified by them, alleging that upon information which they consider reliable they believe that fraud or error, although not manifest on the general return of votes made therefrom, was committed in the computation of the votes cast for all offices or for any particular office or offices in such election district, or in the marking of the ballots, or otherwise in connection with such ballots.  It shall not be necessary for the petitioners to specify in their petition the particular act of fraud or error which they believe to have been committed, nor to offer evidence to substantiate the allegations of their petition.

25 P.S. § 3261(a).[8]

Petitioners acknowledge Section 1703 also deals with petitions to open ballot boxes and contains additional limitations, but they argue the limitations apply only to subsequent petitions filed after an initial petition uncovers fraud or error.  Section 1703(a)(1) provides as follows:

(a)(1) Any petition to open a ballot box or to recanvass the votes on a voting machine or an electronic voting system pursuant to sections 1701 and 1702 shall be filed no later than five (5) days after the completion of the computational canvassing of all returns of the county by the county board.  If any error or fraud is found the court shall grant the interested parties an additional five (5) days to file petitions requesting additional ballot boxes to be opened or voting machines or electronic voting systems to be recanvassed.

(i) Except as set forth in subclause (ii):

---

[8] Section 1702 of the Election Code, 25 P.S. § 3262, contains language similar to Section 1701, except it governs the recanvassing of voting machines following an allegation of fraud or error, rather than the opening of ballot boxes.  According to Section 1118-A of the Election Code, added by Section 4 of the Act of July 11, 1980, P.L. 600, 25 P.S. § 3031.18, Section 1701 applies when an "election district uses an electronic voting system utilizing paper ballots," while Section 1702 applies when an "election district uses any other type of electronic voting system."

15

(A) a recount or recanvass shall include all election districts in which ballots were cast for the office in question; and

(B) petitions, accompanied by the appropriate money or bond, must be filed in each election district in accordance with this act.

(ii) Subclause (i) shall not apply if a petitioner under section 1701 or 1702 pleads that a particular act of fraud or error occurred and offers prima facie evidence supporting the allegation.

25 P.S. § 3263(a)(1).

Petitioners' argument depends on distinguishing the two sentences of Section 1703(a)(1). According to Petitioners, the limitations found in Section 1703(a)(1)(i)-(ii) do not apply to the first sentence of Section 1703(a)(1), which deals with "[a]ny petition to open a ballot box . . . pursuant to sections 1701 and 1702," but only to the second sentence, which provides "interested parties" with an additional five days to file petitions "[i]f any error or fraud is found." *Id.* Petitioners maintain interpreting the Election Code in any other way would "render Section 1701(a) a logical nullity." Petitioners' Br. at 13. They emphasize arranging for three electors to file petitions within five days of completion of the computational canvassing as to every election district in the Commonwealth would be functionally impossible. *Id.* at 11-14.

## A. Plain language

Section 1703's plain language belies Petitioners' contentions. The structure of Section 1703(a)(1) demonstrates the limitations found in Section 1703(a)(1)(i)-(ii) are applicable to both sentences of Section 1703(a)(1) and to petitions to open ballot boxes generally. Section 1703(a)(1)(i)-(ii) appears immediately under Section 1703(a)(1), which consists of two sentences in a single, continuous paragraph. If the General Assembly had intended Section 1703(a)(1)(i)-(ii) to modify only part of Section 1703(a)(1), it could have split Section 1703(a)(1) into separate subsections

16

and placed the language found in Section 1703(a)(1)(i)-(ii) under only one of those subsections.

Further, Section 1703(a)(1)(ii) expressly states Section 1703(a)(1)(i) applies to petitions to open ballot boxes under Section 1701. Section 1703(a)(1)(ii) provides the limitations found in Section 1703(a)(1)(i) "shall not apply **if a petitioner under section 1701** or 1702 pleads that a particular act of fraud or error occurred and offers prima facie evidence supporting the allegation." 25 P.S. § 3263(a)(1)(ii) (emphasis added). Petitioners do not explain why our General Assembly would have included conditions where Section 1703(a)(1)(i) does not apply to "a petitioner under section 1701" if Section 1703(a)(1)(i) was never meant to apply to petitioners under Section 1701, as they suggest.

"Where statutory language is clear and unambiguous, this Court must give effect to the words of the statute. When interpreting a statute, courts may not look beyond the plain meaning of a statute under the guise of pursuing its spirit." *City of Johnstown v. Workers' Comp. Appeal Bd. (Sevanick)*, 255 A.3d 214, 220 (Pa. 2021) (citations omitted). Even when the language of a statute is clear, however, we must presume our General Assembly intended the entire statute to be effective and certain, and sought to avoid results that are absurd, impossible of execution, or unreasonable. *Commonwealth v. Shiffler*, 879 A.2d 185, 189-90 (Pa. 2005) (citing 1 Pa.C.S. § 1922(1), (2)).

Here, arguments arose, both in Petitioners' brief and during argument before this Court, that applying the plain language of Section 1703(a)(1)(i)-(ii) as we have interpreted it would result in an unreasonable or absurd construction of the statute. These arguments generally relate to concerns that (1) applying the limitations found in Section 1703(a)(1)(i)-(ii) to petitions to open ballot boxes under Section 1701(a)

17

would harm public confidence in election integrity, (2) it would be impossible for petitioners to proceed under Section 1701(a) with respect to statewide races because of the expense and number of electors necessary to file as to every election district, and (3) it would be difficult to obtain evidence of fraud or error without first opening a ballot box. For the reasons discussed below, the Court disagrees and concludes the plain language of Section 1703(a)(1)(i)-(ii) does not result in an unreasonable or absurd construction.

## B. Election integrity

Although the language of Section 1701(a) has remained virtually unchanged since our General Assembly passed the Election Code in 1937, the limitations found in Section 1703(a)(1)(i)-(ii) are the result of a 2004 amendment. *See* Act of October 8, 2004, P.L. 807.[9] Significantly, the amendment also added an automatic recount procedure, found in Section 1404(g).[10] The Court's review of the legislative journals

---

[9] The concurring and dissenting opinion repeatedly quotes language from our Supreme Court's decision *In re 2003 Gen. Election for the Off. of Prothonotary*, 849 A.2d 230 (Pa. 2004), regarding the relative ease of opening ballot boxes. The Court decided *2003 Gen. Election* in May 2004, before our General Assembly amended the Election Code to add Section 1703(a)(1)(i)-(ii) on October 8, 2004. Accordingly, the language the concurring and dissenting opinion relies on does not control, and has little if any relevance to, our decision today.

[10] The automatic recount procedure is as follows, in relevant part:

(g) This subsection relates to recounts and recanvasses ordered by the secretary.

(1) Except as set forth in subsection (h), the secretary shall order a recount and recanvass to all county boards if the unofficial returns prepared in accordance with subsection (f) reflect any of the following:

(i) A candidate for a public office which appears on the ballot in every election district in this Commonwealth was defeated by one-half of a percent or less of the votes cast for the office. This subclause includes a candidate for retention to a Statewide judicial office.

associated with the 2004 amendment has not uncovered any discussion of Section 1703(a)(1)(i)-(ii). The clearest description of the amendment's intent comes from then-Governor Edward Rendell, who issued an explanatory message when signing the amendment into law. Our Supreme Court has considered similar messages when discerning the General Assembly's intent. *See Commonwealth v. Taylor*, 104 A.3d 479, 491 (Pa. 2014) (citing the governor's message when interpreting Section 3814 of the Vehicle Code, 75 Pa.C.S. § 3814); *Powell v. Unemployment Comp. Bd. of Rev.*, 157 A.3d 884, 897 (Pa. 2017) (Todd, J., dissenting) (citing the governor's message when interpreting Section 214 of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, added by Section 3 of the Act of June 15, 2005, P.L. 8, 43 P.S. § 774). Regarding the statutory language at issue in this matter, Governor Rendell offered the following:

> The bill, approved with overwhelming bipartisan support by the state's General Assembly, authorizes the Secretary of the Commonwealth to order each county election board to recount all ballots cast in a specific race in the event that results are within 0.5 percent between the winning and losing candidate.
>
> . . . .
>
> In addition to the automatic recount, candidates in statewide offices can seek a recount on their own when they have lost by more than 0.5 percent and candidates in non-statewide races may still file for recounts as before. However, **in order to ensure that all people have their vote counted equally, a candidate will have to seek a recount of all votes cast unless the candidate can claim that a particular act of fraud or a mistake occurred**. In instances where a specific allegation

---

(ii) A ballot question appearing on the ballot in every election district in this Commonwealth was approved or rejected by one-half of a percent or less of the votes cast on the question.

25 P.S. § 3154(g)(1)(i)-(ii).

> can be made, a total recount is not necessary, and a recount may be sought only where the irregularity allegedly took place.

Governor's Message, Oct. 31, 2004 (emphasis added).

Thus, our interpretation of Section 1703(a)(1) is consistent not only with the plain language of the Election Code but with Governor Rendell's explanation of the 2004 amendment at the time of its passage. This explanation indicates the purpose of imposing the limitations found in Section 1703(a)(1)(i)-(ii) was, at least in part, to promote the fairness of recount procedures when the automatic recount in Section 1404(g) does not apply. Requiring an automatic recount of each election district or requiring petitioners to seek a recount of each district ensures "all people have their vote counted equally" when no evidence of fraud or error is present. *See id.* If petitioners can offer evidence of a particular act of fraud or error, in contrast, only a recount of votes the fraud or error affected is necessary. This is logical because there is no reason to believe people did not "have their vote counted equally" in election districts unrelated to the fraud or error identified. *See id.*

By way of example, the Commonwealth faced a remarkably close statewide election a year before our General Assembly passed the 2004 amendment and added the automatic recount and Section 1703(a)(1)(i)-(ii) to the Election Code. In 2003, Republican Susan Gantman (Gantman) narrowly defeated Democrat John Driscoll (Driscoll) for a seat on the Pennsylvania Superior Court. In an opinion addressing the election, our Supreme Court noted Gantman defeated Driscoll **by only 28 votes out of over 2,250,000 votes cast**. *In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election*, 843 A.2d 1223, 1225 (Pa. 2004). Hypothetically, if Driscoll had found a single election district with a 29-vote discrepancy in his favor, he could have changed the outcome of the election, even without evidence of fraud or error. This would have been a patently unjust result, however, if discrepancies existed in favor

20

of Gantman in other election districts and Driscoll did not seek a recount in every district in which ballots were cast.  Gantman's only recourse would be to search for the proverbial needle in a haystack, with no guarantee of deducing where, out of the thousands of possible election districts, she should file her own petitions.  Requiring recounts in every district works to eliminate this problem by facilitating discovery of all possible discrepancies.  It therefore promotes, rather than hinders, election integrity because it helps to ensure elections are decided by the will of the voters and not luck or successful lawyering.

## C. Impossibility

Regarding Petitioners' other concerns, the Court cannot accept the argument that applying the plain language of Section 1703(a)(1) "render[s] Section 1701(a) a logical nullity," or is otherwise absurd, impossible of execution, or unreasonable. *See* Petitioners' Br. at 13.  In practical terms, it is highly unlikely anyone would be able to arrange for three petitioners to timely file petitions to open ballot boxes in every election district in the Commonwealth.[11]  This argument nonetheless ignores

---

[11] The argument that there would be an unreasonable monetary barrier to filing petitions to open ballot boxes in every election district in the Commonwealth lacks merit.  Section 1701(b) requires petitioners to submit a cash deposit or bond for each election district where they request a recount. It provides:

> (b) Every petition for the opening of a ballot box under the provisions of this section shall be filed in the office of the prothonotary of the proper county, accompanied by a deposit of cash in the amount of fifty ($50.00) dollars, or by a bond signed by the petitioners as principals and by a corporate surety to be approved by the court, in the amount of one hundred ($100.00) dollars, conditioned upon the payment to the county treasurer for the use of the county of the sum of fifty ($50.00) dollars, in the event that, upon the opening of the ballot box, it shall not appear that fraud or substantial error was committed in the computation of the votes cast on the ballots contained therein, or fraud in the marking of the ballots contained therein, or otherwise in connection with such ballots.

the ongoing viability of Section 1701(a) with respect to local races. Numerous races, such as township supervisor, tax collector, and constable, may occur in only a small number of election districts or even one election district. Races for local election-related offices, including judge of elections and inspector of elections, always occur in one election district. Indeed, the significant number of coordinated electors filing recount petitions in this case, as well as the *Berks County* and *Chester County* cases, confirms it would remain practical to employ Section 1701(a) in one of these smaller contests.[12]

Petitioners' argument also fails to recognize the automatic recount procedure at Section 1404(g), which our General Assembly implemented at the same time as Section 1703(a)(1)(i)-(ii). As quoted above, the procedure applies to statewide races and ballot questions and is available when a candidate is defeated, or when a ballot question is approved or rejected, by "one-half of a percent or less of the votes cast." 25 P.S. § 3154(g)(1)(i)-(ii). The presence of this procedure reveals our General Assembly exercised its policymaking authority by deciding recounts are essential in close, statewide races but imposing reasonable limitations if races are not statewide or candidates lose by a wider margin.

## D. Ease of obtaining evidence

Before concluding our review, it is important to stress the public nature of the Commonwealth's election procedures, including the computation and canvassing of

---

25 P.S. § 3261(b); *see also* 25 P.S. § 3263(a)(1)(i)(B). The cost to file a petition to open a ballot box is as little as a $50 cash deposit per election district spread across three petitioners, which amounts to about $16.67 per petitioner. The cost would not change no matter how many petitioners were involved. In theory, even if petitions were filed as to all 9,178 election districts in the Commonwealth, the cost per petitioner would remain the same—$16.67.

[12] Based on the above, we disagree with the concurring and dissenting opinion's characterization of our holding. We do not conclude Section 1703(a)(1)(i)-(ii) negates or impliedly repeals Section 1701(a). In reality, we conclude the exact opposite.

22

ballots. *See, e.g.*, 25 P.S. § 3154(a) ("The county board shall . . . publicly commence the computation and canvassing of the returns . . . ."). These procedures provide the opportunity to obtain evidence of fraud or error "in the computation of the votes cast . . . or in the marking of the ballots, or otherwise in connection with such ballots" when it exists. *See* 25 P.S. § 3261(a).

Perhaps the most compelling example is Section 417(a) of the Election Code, 25 P.S. § 2687(a), which permits the appointment of watchers to observe the election process. Watchers may be present at polling places "from the time that the election officers meet prior to the opening of the polls . . . until the time that the counting of votes is complete." 25 P.S. § 2687(b). Additionally, watchers may be present when the envelopes containing absentee and mail-in ballots are opened and counted, and during the computation and canvassing of ballots generally. *See* Section 1308(b) of the Election Code, added by Section 11 of the Act of March 6, 1951, P.L. 3, 25 P.S. § 3146.8(b); Section 1403(a) of the Election Code, 25 P.S. § 3153(a). Given these election procedures, the Court finds no merit to the argument that we must not apply the plain language of Section 1703 because of difficulty obtaining evidence of fraud or error.

## VI. Conclusion

For the foregoing reasons, the Court concludes the Board had standing to challenge the petitions to open ballot boxes, and Petitioners did not comply with the requirements of Section 1703(a)(1)(i)-(ii) when filing their petitions. Applying the plain language of Section 1703(a)(1)(i)-(ii), Petitioners needed to (1) file their petitions to open ballot boxes as to each election district in which ballots were cast for the offices in question or (2) plead and offer prima facie evidence that a particular act of fraud or error occurred. Petitioners filed their petitions to open ballot boxes

23

in only 36 election districts while challenging countywide and statewide elections. They did not initially attempt to plead or produce prima facie evidence of fraud, and they did not challenge Common Pleas' conclusion that the concerns they sought to raise in their motion to amend do not constitute fraud or error appropriate to a recount proceeding. We do not discern any infirmities in this plain language interpretation. Rather, we conclude the General Assembly reasonably imposed limits on the ability of electors to file petitions to open ballot boxes, and we must defer to its judgment. We therefore affirm Common Pleas' order dated March 3, 2023.[13]

_____
**STACY WALLACE**, Judge

---

[13] Because we conclude Petitioners are not entitled to a recount, we need not address their request for a recount conducted by hand. Nonetheless, we observe this Court concluded in two recent decisions, including *Chester County*, that petitioners who sought to open ballot boxes were not entitled to hand recounts. *See Chester County*, slip op. at 19-21; *In re: Petition to Open Ballot Box Pursuant to 25 P.S. § 3261(a)* (Pa. Cmwlth., No. 553 C.D. 2022, filed June 7, 2022).

24

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Petitions to Open Ballot Box
Pursuant to 25 P.S. §3261(A) and
for a Correct Count of the General
Election

Appeal of: Steven C. Dawson, Larry
Aitken, Daniel G. Berrien, Candace
Chrystel Biafore, Jessica D. Briggs,
Carole Browne, Patrice Bumba,
Christine Callaghan, Barbara Canete,
Sharon Clancy, James J. Del Rio, Jr.,
Elizabeth Diehl, Lorraine Doan,
Lindsay Emigh, William Patrick Everett,
Joseph Favoroso, Rosalie Flemke,
Debra Frei, Frances Grous, Warren H.
Harner, Jr., Christine I. Heitman,
Timothy Hellings, Stephanie Inselberg,
Laura M. Mack, Martha McDonald,
Joe Mitchener, Erika Montero, Patricia
H. Murray, Mary Josephine O'Connor,
Karin Lee Rohrer, Robert Ruidiger,
Melissa Smith, Natalie Smith, Khristi L.
Stoll, Marla R. Stoll, Audrey Strein,
Todd Walbridge, Peter David Yodis,
Lori Zaro, Christina Cook, Maria Bates,
Joseph Farrell, Nicholas Grauber, Max
Lihui Jin, Sharon Walbridge, Roland A.
Flemke, Michelle Pezzeca, Klaus
Heitman, Joseph McGinty, Kevin Hirst,
Mary Ann Hirst, Sharon Brooks,
Therese Marshall, Brian Land, Avery
Strein, William A. Capaldi, Glenn T.
Garwood, Beth Roth, John Smith,
Rebecca J. Belmont, Carolyn
Dominski Everett, Joseph Montero,
Noah Montero, Shane L. Fogleman,
Sara I. Hunt, Laurie Katz, Leeann
Levin, Fred Allen Miller, Marilyn L.
Miller, Allison M. Beard, Nancy
Kathleen Cuozzo, Andrea Carr,
Rosemary B. Carr, Christopher

No. 237 C.D. 2023

Domanico, Keun Su Lee, John P. :
Brown, Robert J. Secor, Linda Ann :
Haywood, Kim D. Starkey, Shannon :
Okane Harris, Michael Leigh Moffs :
Walson, Joseph M. Priest, Margo K. :
Priest, Harry Payne Martin, Nancy :
Tegano, Susan W. Oliver, Leslie Mae :
Yodis, Tracy W. Bailey, James Lowell :
Mack, Laura Kate Tressler, Timothy M. :
Tressler, John A. Lang, Allison E. :
Zimmer, Barbara Vees, Anthony :
Wilwert, Steen Matusz, Christopher :
Zaro, Brad Frapwell, Brooke Frapwell, :
Robert Rosarto, Deborah Tyrrell, :
Richard Kuzman, Mary Walchonski, :
Brendan Gorman, Mary Elizabeth :
Gorman, Patricia Nolan, Charles :
Russo, Linda Ziff, Robert Ziff, Vickie :
Lupisella, and Ellen Messing :

# **O R D E R**

**AND NOW**, this 9th day of May 2023, the order of the Court of Common Pleas of Bucks County, dated March 3, 2023, is hereby **AFFIRMED**.

**STACY WALLACE**, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Petitions to Open Ballot Box :
Pursuant to 25 P.S. §3261(A) and :
for a Correct Count of the General : No. 237 C.D. 2023
Election : Argued:  April 5, 2023
 :
Appeal of: Steven C. Dawson, Larry :
Aitken, Daniel G. Berrien, Candace :
Chrystel Biafore, Jessica D. Briggs, :
Carole Browne, Patrice Bumba, :
Christine Callaghan, Barbara Canete, :
Sharon Clancy, James J. Del Rio, Jr., :
Elizabeth Diehl, Lorraine Doan, :
Lindsay Emigh, William Patrick Everett,:
Joseph Favoroso, Rosalie Flemke, :
Debra Frei, Frances Grous, Warren H. :
Harner, Jr., Christine I. Heitman, :
Timothy Hellings, Stephanie Inselberg, :
Laura M. Mack, Martha McDonald, :
Joe Mitchener, Erika Montero, Patricia :
H. Murray, Mary Josephine O'Connor, :
Karin Lee Rohrer, Robert Ruidiger, :
Melissa Smith, Natalie Smith, Khristi L. :
Stoll, Marla R. Stoll, Audrey Strein, :
Todd Walbridge, Peter David Yodis, :
Lori Zaro, Christina Cook, Maria Bates, :
Joseph Farrell, Nicholas Grauber, Max :
Lihui Jin, Sharon Walbridge, Roland A. :
Flemke, Michelle Pezzeca, Klaus :
Heitman, Joseph McGinty, Kevin Hirst, :
Mary Ann Hirst, Sharon Brooks, :
Therese Marshall, Brian Land, Avery :
Strein, William A. Capaldi, Glenn T. :
Garwood, Beth Roth, John Smith, :
Rebecca J. Belmont, Carolyn :
Dominski Everett, Joseph Montero, :
Noah Montero, Shane L. Fogleman, :
Sara I. Hunt, Laurie Katz, Leeann :
Levin, Fred Allen Miller, Marilyn L. :
Miller, Allison M. Beard, Nancy :
Kathleen Cuozzo, Andrea Carr, :

Rosemary B. Carr, Christopher :
Domanico, Keun Su Lee, John P. :
Brown, Robert J. Secor, Linda Ann :
Haywood, Kim D. Starkey, Shannon :
Okane Harris, Michael Leigh Moffs :
Walson, Joseph M. Priest, Margo K. :
Priest, Harry Payne Martin, Nancy :
Tegano, Susan W. Oliver, Leslie Mae :
Yodis, Tracy W. Bailey, James Lowell :
Mack, Laura Kate Tressler, Timothy M. :
Tressler, John A. Lang, Allison E. :
Zimmer, Barbara Vees, Anthony :
Wilwert, Steen Matusz, Christopher :
Zaro, Brad Frapwell, Brooke Frapwell, :
Robert Rosarto, Deborah Tyrrell, :
Richard Kuzman, Mary Walchonski, :
Brendan Gorman, Mary Elizabeth :
Gorman, Patricia Nolan, Charles :
Russo, Linda Ziff, Robert Ziff, Vickie :
Lupisella, and Ellen Messing :


BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

CONCURRING AND DISSENTING OPINION
BY JUDGE FIZZANO CANNON                    FILED:  May 9, 2023


       The Majority holds that three qualified electors cannot bring a petition to open a ballot box under Section 1701(a) of the Pennsylvania Election Code (Election Code),[1] 25 P.S. § 3261(a), unless such petition is either filed and appropriate fees paid in every election district in which the election was contested, or sets forth specific allegations of fraud or error.  As this interpretation is in direct

_____
[1] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. § 3261(a).

CFC - 2

contravention of the language of the Election Code, I cannot agree with the Majority and must dissent.[2]

Initially, I note that Pennsylvania's Statutory Construction Act of 1972 (Statutory Construction Act)[3] provides certain basic presumptions to be employed in conducting an exercise of statutory interpretation, *to wit*:

> (1) That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.
>
> (2) That the General Assembly intends the entire statute to be effective and certain.
>
> (3) That the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth.
>
> (4) That when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language.
>
> (5) That the General Assembly intends to favor the public interest as against any private interest.

1 Pa.C.S. § 1922. From these statutory presumptions, our Supreme Court has recognized that,

> [i]n matters involving statutory interpretation, the Statutory Construction Act directs courts to ascertain and effectuate the intent of the General Assembly. A statute's

---

[2] I concur with the Majority that the instant matter is not moot and that the Bucks County Board of Elections has standing to contest the petitions filed pursuant to Section 1701(a) of the Election Code.[2] *See* Majority Opinion at 11-14. I further concur with the Majority that the petitioners herein are not entitled to a hand recount. *See* Majority Opinion at 23 n.10.

[3] 1 Pa.C.S. §§ 1501-1991.

CFC - 3

plain language generally provides the best indication of legislative intent. In construing the language, however, and giving it effect, we should not interpret statutory words in isolation, but must read them with reference to the context in which they appear.

*Commonwealth v. Giulian*, 141 A.3d 1262, 1267 (Pa. 2016) (internal citations and quotation marks omitted). Additionally, the Statutory Construction Act provides that "[e]very statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a).

Regarding petitions to open a ballot box, Section 1701(a) of the Election Code, 25 P.S. § 3261(a), provides that

> the court of common pleas, or a judge thereof, of the county in which any election district is located in which ballots were used, ***shall open the ballot box*** of such election district used at any general, municipal, special or primary election held therein, and cause the entire vote thereof to be correctly counted by persons designated by such court or judge, ***if three qualified electors***[4] ***of the election district shall file***, as hereinafter provided, ***a petition duly verified*** by them, ***alleging that upon information which they consider reliable they believe that fraud or error, although not manifest on the general return of votes made therefrom, was committed in the computation of the votes cast for all offices or for any particular office or offices in such election district***, or in the marking of the ballots, or otherwise in connection with such ballots. ***It shall not be necessary for the petitioners to specify in their petition the particular act of fraud or error which they believe to have been committed, nor to***

_____

[4] Section 102 of the Election Code defines a "qualified elector" as "any person who shall possess all of the qualifications for voting now or hereafter prescribed by the Constitution of this Commonwealth, or who, being otherwise qualified by continued residence in his election district, shall obtain such qualifications before the next ensuing election." 25 P.S. § 2602.

***offer evidence to substantiate the allegations of their petition.***

25 P.S. § 3261(a) (emphasis added).  Under this language, therefore, a court of common pleas "*shall* open the ballot box" without specification of particular fraud or error, and upon a general allegation of a belief of fraud or error pertaining to any or all elections in the Commonwealth, without regard to the number of election districts involved in that election.  *See id.*

Section 1701(a) further expressly and plainly states that petitioners need not specify a particular act of fraud or error or offer evidence to substantiate the allegations of their petition.  *See* 25 P.S. § 3261(a).  With regard to this portion of the statute, our Supreme Court has quoted this Court in observing that

> the General Assembly [has] made the procedure to open ballot boxes relatively easy, but . . . [has] also included the verification requirement, no doubt because it felt it necessary to require some basis for the opening of boxes to prevent the filing of Petitions for the sole purpose of indulging in a "fishing expedition."

*In re 2003 Gen. Election for Off. of Prothonotary*, 849 A.2d 230, 239 (Pa. 2004) (quoting *Giacobello v. Bd. of Elections of Borough of Mount Union, Cnty. of Huntingdon*, 322 A.2d 429, 431 (Pa. Cmwlth. 1974)) (internal citation and some quotation marks omitted).

Section 1703(a)(1) of the Election Code, 25 P.S. § 3263(a)(1), does not negate the language of Section 1701(a), as the Majority concludes, but rather operates in tandem with this section.  Importantly, Section 1703(a) is not implicated

unless and until a petition is filed under Section 1701 or 1702.[5]  Section 1703(a)(2) provides:

> ***Any petition to open a ballot box*** or to recanvass the votes on a voting machine or an electronic voting system ***pursuant to section[] 1701 . . . shall be filed no later than five (5) days after the completion of the computational canvassing of all returns*** of the county by the county board.  ***If any error or fraud is found*** the court shall grant the interested parties an ***additional five (5) days to file petitions*** requesting additional ballot boxes to be opened or voting machines or electronic voting systems to be recanvassed.
>
> (i) Except as set forth in subclause (ii):
>
>> (A) a recount or recanvass shall include all election districts in which ballots were cast for the office in question; and
>>
>> (B) petitions, accompanied by the appropriate money or bond, must be filed in each election district in accordance with this act.
>
> (ii) Subclause (i) shall not apply if a petitioner under section 1701 . . . pleads that a particular act of fraud or error occurred and offers prima facie evidence supporting the allegation.

25 P.S. § 3263(a)(1) (internal footnote omitted) (emphasis added).

---

[5] Section 1702(a)(1) of the Election Code provides a procedure parallel to Section 1701 to be used for the recanvassing of voting machines in election districts where such machines are employed.  *See* 25 P.S. § 3262(a)(1).  As with Section 1701 petitions, Section 1702 petitions do not require petitioners to plead or prove particular acts of fraud or error.  *See id.*  Although the language of Section 1703(a)(1) pertains to initial and secondary petitions filed under both Section 1701 and 1702, for the sake of clarity, I will henceforth refer only to Section 1701 petitions, which are the relevant petitions in this matter.

The first sentence of Section 1703(a)(1) sets forth the additional requirement for petitions to open a ballot box pursuant to Section 1701(a) that such petitions must be filed "no later than five (5) days after the completion of the computational canvassing of all returns of the county by the county board." 25 P.S. § 3263(a)(1). This first sentence merely provides a five-day time limit for the filing of an initial Section 1701 petition. 25 P.S. § 3263(a)(1). Thus, reading this first sentence of Section 1703(a)(1) together with Section 1701(a), where three qualified electors file, within five days of the completion of the computational canvassing of the election returns by the county board of elections, a petition to open a ballot box that includes an unspecified allegation of fraud or error verified by the electors to be based upon information they consider reliable evidence of fraud or error, the court in which the petition is filed *shall* open the ballot box and cause the entire vote of that ballot box to be correctly counted by persons designated by such court or judge. *See* 25 P.S. § 3261(a); 25 P.S. § 3263(a)(1). If no fraud or error is discovered, then the process of opening ballot boxes initiated by the Section 1701 petitioner comes to an end.

"If any error or fraud is found[,]" however, through the opening of the ballot box resulting from the initial Section 1701 petition, then the Section 1701 petitioner, or other interested parties, may proceed to file additional petitions pursuant to the procedures outlined in the second sentence of Section 1703(a)(1) and thereafter. 25 P.S. § 3263(a)(1). The second sentence of Section 1703(a)(1) provides that, "[i]f any error or fraud is found[,] the court shall grant the interested parties an additional five (5) days to file petitions requesting additional ballot boxes to be opened or voting machines or electronic voting systems to be recanvassed." 25 P.S. § 3263(a)(1). This provision allows for additional 1701 petitions to be filed

CFC - 7

where the initial petition(s) revealed fraud or error. The subsequent procedures contained in subclauses 1703(a)(1)(i) and 1703(a)(1)(ii) apply only to subsequent Section 1701 petitions filed after the discovery of fraud or error as a result of the opening of a ballot box scheduled in response to an initial Section 1701 petition (secondary Section 1701 petition). *See* 25 P.S. §§ 3263(a)(1)(i) & (a)(1)(ii). To interpret Section 1703 otherwise would negate the provision of Section 1701 that particular fraud or error need not be pleaded. Therefore, an initial Section 1701 petition, filed within the first five days following the election, need neither be filed in every election district for a particular election nor allege specific fraud or error. These requirements instead pertain to secondary Section 1701 petitions filed upon the discovery or confirmation of error or fraud resulting from the opening of a ballot box in response to an initial petition filed pursuant to Section 1701.[6] The secondary Section 1701 petition request occurs after the initial Section 1701 petition is granted and the ballot box opened, within the additional five-day period provided for in Section 1703(a)(1). This secondary Section 1701 request to open additional ballot boxes (made pursuant to Section 1703(a)(1)) must include all election districts for a particular race and payment for each ballot box opening requested unless the secondary Section 1701 petition alleges fraud or error with particularity.

This view comports with our Supreme Court and this Court's observation that the General Assembly has made the procedure to open ballot boxes relatively easy. *See 2003 Gen. Election for Off. of Prothonotary*. While I appreciate

---

[6] I appreciate the Majority's observation that the General Assembly, in enacting the Act of October 8, 2004, P.L. 807 (2004 Amendment), could have split Section 1703(a)(1) into two separate subsections to clarify to which portion of 1703(a)(1) the subsections that follow – 1703(a)(1)(i)-(ii) – applied. *See* Majority Opinion at 16. However, while such a division of Section 1703(a)(1) would have certainly served to clarify the operation of the Section, that the General Assembly did not so divide the Section does not change or otherwise counteract the meaning of or interaction between the two sentences of Section 1703(a)(1), as discussed *supra*.

that our Supreme Court's decision in *2003 General Election for Office of Prothonotary* predated the Act of October 8, 2004, P.L. 807 (2004 Amendment),[7] I note that, in enacting the 2004 Amendment, the General Assembly could have removed this ease of procedure language from the language of Section 1701(a), but did not. Instead, the Section 1701 ease of procedure language that allows for a petition to open a ballot box to be brought without the specification of a particular act of fraud or error remained unchanged in Section 1701(a) following the 2004 Amendment. *See* 1 Pa.C.S. § 1922(4) ("when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language"). Moreover, instead of removing this language, the General Assembly doubled down and reinserted exactly the same ease of procedure language again in the new Section 1701(a.1),[8] which provides:

> (a.1) In cases resulting from a recount or recanvass order by the Secretary of the Commonwealth under section 1404(g), all of the following apply:
>
> > (1) Upon petition under clause (2), Commonwealth Court shall:
> >
> > > (i) open the ballot box of each election district in which ballots were used at a general, municipal, special or primary election; and
> > >
> > > (ii) cause the entire vote of the election district to be correctly counted by persons designated by the court.

---

[7] *See* Majority Opinion at 18 n.9.

[8] Section 1701(a.1) concerns initial petitions to open a ballot box resulting from a recount or recanvass order by the Secretary of the Commonwealth. *See* 25 P.S. § 3261(a.1).

CFC - 9

(2) To obtain relief under clause (1):

(i) Three (3) qualified electors of a county must file a verified petition alleging that, upon information which they consider reliable, they believe that fraud or error, although not manifest on the general return of votes, was committed:

(A) in the computation of votes cast;

(B) in the marking of the ballots; or

(C) otherwise in connection with the ballots.

(ii) ***It is not necessary for the petitioners to specify in their petition the particular act of fraud or error which they believe to have been committed nor to offer evidence to substantiate the allegations of their petition.***

25 P.S. § 3261(a.1) (internal footnote omitted) (emphasis provided).  Just as "we may not add statutory language where we find the extant language somehow lacking[,]" this Court may not infer that the General Assembly intended to remove language or requirements from the text of a statute where that text remains after amendment.  *Sivick v. State Ethics Comm'n*, 238 A.3d 1250, 1264 (Pa. 2020).  Further, as our Supreme Court has observed, "as a general rule, a later statute shall not be construed to supply or repeal an earlier statute unless the two statutes are irreconcilable."  *HSP Gaming, L.P. v. City of Philadelphia*, 954 A.2d 1156, 1175-76 (Pa. 2008); *see also* 1 Pa.C.S. § 1971.  An implied repeal of a statute, therefore, "can arise only where the language used in the later statute necessarily discloses an irreconcilable repugnancy between its provisions and those of the earlier statute so

inconsistent as to not admit of any fair consonant construction of the two." *Id.* at 1176. The 2004 Amendment in no way presents inconsistencies rising to the level of an implied repeal of the requirements of Sections 1701 or 1703.

This interpretation also reconciles the language of Section 1701(a) that allows the ballot box opening upon the assertion of a general belief of fraud or error regarding "votes cast for *all offices or any particular office or offices* in such election district," with the language of Section 1703(a)(1)(i)(A), which applies to a recount or recanvass regarding a specific office. *Compare* 25 P.S. § 3261(a), *with* 25 P.S. § 3263(a)(1)(i)(A). Unlike Section 1701(a), Section 1703(a)(1)(i)(A) assumes an initial investigation has already revealed error or fraud in relation to the election for a specific "office in question." Were this not the case, the language of Section 1703(a)(1)(i)(A) would have repeated the expansive language of Section 1701(a).

In the Majority's view, "Section 1703(a)(1)(ii) expressly states that Section 1703(a)(1)(i) applies to petitions to open ballot boxes under Section 1701." Majority Opinion at 16. However, the statute does not say this. The statute says: "Subclause (i) shall not apply if a *petitioner* under [S]ection 1701 . . . pleads that a particular act of fraud or error occurred and offers prima facie evidence supporting the allegation." 25 P.S. § 3263(a)(1)(ii) (emphasis added). By its language, Section 1703(a)(1)(ii) applies to Section 1701 *petitioners* who are then filing secondary Section 1701 petitions after the initial petitions have revealed fraud or error. Such petitioners must file their secondary Section 1701 petition either in all districts pursuant to Section 1703(a)(1)(i) or plead fraud or error with particularity, which pleading would render such petitioners exempt from the requirements of Section 1703(a)(1)(i).

Further, to the extent the Majority relies on the statement of then-Governor Edward Rendell when he signed the 2004 Amendment into law and a hypothetical example about the 2003 election of the Honorable Susan Gantman to support its interpretation of Sections 1701(a) and 1703(a)(1) of the Election Code, I do not agree that either is relevant or has merit. *See* Majority Opinion at 18-19. While I agree that, where the words of a statute are ambiguous, the purpose of statutory interpretation is to ascertain legislative intent, the Majority cites no evidence of what the General Assembly intended. Governor Rendell's statements do not represent a statement of *legislative intent*, but instead an *interpretation by the Executive branch* of the Commonwealth's government as to the meaning of a statute enacted by the General Assembly.[9] Additionally, I agree that the language of Section 1703(a)(1)(i)-(ii) added by the 2004 Amendment and described by Governor Rendell[10] requires that a secondary Section 1701 petition either (1) be filed in all districts where the election occurred, or (2) contain particular allegations of fraud or error. However, the language of Section 1703 indicates that these requirements come into play only after the initial ballot box opening finds fraud or error. *See* 25 P.S. § 3263(a)(1) (noting procedures for subsequent Section 1701 petitions after "error or fraud is found . . ."). Further, Governor Rendell's statement does not account for Section 1701(a)'s statement that petitioners initially filing under that

---

[9] Our Supreme Court has observed that "what is said on the floor of the House or the Senate should not be relied upon in formulating legislative intent." *Commonwealth v. Alcoa Properties, Inc.*, 269 A.2d 748, 749 n.1 (Pa. 1970); *see also Nemacolin, Inc. v. Dep't of Env't Res.*, 541 A.2d 811, 815 (Pa. Cmwlth. 1988) (quoting *Alcoa* and further observing that "this [C]ourt has recognized that floor debates do not constitute legislative history for purposes of statutory interpretation"). Clearly, if we cannot not rely on the words of members of the General Assembly themselves to deduce legislative intent for the purpose of statutory interpretation, then, a fortiori, a governor's words of interpretation carry no weight whatsoever in deducing the same.

[10] *See* Majority Opinion at 19.

section need not allege or prove specific acts of fraud or error, which remained unchanged after the 2004 Amendment as discussed *supra*, nor does it account for the General Assembly's endorsement of this language when it added the same language for a second time, verbatim, into the requirements of Section 1701(a.1) as part of the 2004 Amendment.

Likewise, a close-vote scenario like the one contemplated by the Majority's reference to the election of Judge Gantman, while theoretically possible, does not invalidate the necessary interplay of language contained in the Election Code. *See* Majority Opinion at 19-20. Initially, I note that the results of a close-vote scenario as occurred in the Gantman election would be subject to the automatic recount process introduced by the 2004 Amendment. Further, the Majority's suggestion that the hypothetical discovery by Candidate Driscoll of a single election district with a 29-vote discrepancy would sway the election in his favor without recourse for then-Candidate Gantman is incorrect. In such a scenario, the second sentence of Section 1703(a)(1) would allow "interested parties" – Candidate Gantman, for example, or Candidate Driscoll, if discrepancies discovered as a result of an initial Section 1701 petition indicated fraud or error – to continue with the subsequent procedures authorized by the second sentence of Section 1703(a)(1). Thereunder, an interested party would be able to request the opening of further ballot boxes, subject to the additional requirements of Section 1703(a)(1)(i)-(ii) (regarding either the pleading of specific fraud or error or the opening of all remaining pertinent ballot boxes), which requirements were not previously imposed upon the initial Section 1701. This language therefore allows for the continuation of the process of opening ballot boxes as required to determine the accurate results of the election in question, regardless of whether the contested outcome results from fraud or from

error, provided that the fraud or error is pleaded with particularity in the secondary Section 1701 petition.

Further, in addition to directly contravening Section 1701(a)'s express statement that petitioners need not allege specific acts of fraud or error, requiring petitioners to file and pay fees in all districts where an election is contested upon an initial ballot box opening request would mean that, at least in statewide elections, only qualified electors with access to considerable organizational and financial resources would be able to file petitions pursuant to Section 1701(a). Such a result would render Section 1701(a) meaningless to all but a very few petitioners. In fact, despite adopting such an interpretation, the Majority appears to concede that, for statewide elections at least, a requirement that three qualified electors timely file petitions in every election district within the Commonwealth renders a Section 1701(a) petition to open a ballot box virtually impossible without the pleading of particular fraud or error. *See* Majority Opinion at 20 (stating that, "[i]n practical terms, it is highly unlikely anyone would be able to arrange for three petitioners to timely file petitions to open ballot boxes in every election district in the Commonwealth"). Further, the Majority's suggestion that the cost of such an endeavor would not present barriers to employing this procedure is dubious. *See* Majority Opinion at 20 n.9. Even accepting the Majority's utopian suggestion that the cost of filing of petitions to open ballot boxes would be shared equally among the qualified electors required to file such petitions in the Commonwealth's 9,178 election districts, such optimism still does not resolve the Majority's own acknowledgment that the timely organization of the required 27,534 individual qualified electors necessary to file such petitions would be all but impossible. *See* Majority Opinion at 20 & n.9.

The Majority's interpretation also ignores the fact that Section 1701(a) is not limited to small or local elections. *See* Majority Opinion at 20-21. While the Majority notes that Section 1701(a) is applicable and would work well in small elections, the Majority offers no textual support for the assertion that Section 1701(a) does not apply to larger races. *See id.* Accordingly, under the Majority's reading, the same language from Section 1701(a) would provide protections only in certain elections while simultaneously not applying those protections in others. This Court may not interpret the Election Code to require such an unreasonable and/or absurd result. *See Summit Sch., Inc. v. Dep't of Educ.*, 108 A.3d 192, 197 (Pa. Cmwlth. 2015) ("It is presumed that the legislature does not intend a result that is absurd, impossible of execution or unreasonable. [] 1 Pa.C.S. § 1922(1). Thus, statutes should receive a sensible construction and should be construed, if possible, so that absurdity and mischief may be avoided." (internal citations, quotation marks, and brackets omitted)). Further, such a reading ignores the fact that the General Assembly added Section 1701(a.1) to Section 1701 as part of the 2004 Amendment. Section 1701(a.1) pertains to recount/recanvass orders of the Secretary of the Commonwealth, whose jurisdiction extends to statewide elections.

The 2004 addition to the Election Code of the automatic recount/recanvas procedure for statewide elections where the final ballot count results in one candidate losing by 0.5% or less of the vote cast for the office does not remedy the impossibility of the application of the Section 1701 procedures to statewide elections. *See* 2004 Amendment; 25 P.S. § 3154(g)(1)(i)-(ii). This recount provision is triggered automatically based on vote tabulation. Sections 1701(a) and (a.1), on the other hand, provide procedures to request the opening of individual ballot boxes to investigate the quite different scenario of suspected fraud or error.

Of course, the General Assembly was free to remove or refine the Section 1701(a) procedures for petitions to open ballot boxes when amending the Election Code in 2004, but did not. Instead, it added the same language a second time in Section 1701(a.1).

Likewise, the Majority's observations regarding the public nature of the Commonwealth's election procedures and the fact that Section 417(a) of the Election Code, 25 P.S. § 2687(a),[11] provides for the appointment of poll watchers by candidates or political parties/bodies to observe the election process do not nullify the additional election integrity protection afforded by allowing unattached qualified electors to file petitions to open ballot boxes pursuant to Section 1701(a). *See* Majority Opinion at 21-22. Section 1701(a) is not limited to appointed poll watchers, but instead, by its language, allows for any three qualified electors to engage in such a process. The General Assembly chose to include in the Election Code both the Section 1701(a) and Section 1703(a)(1) procedures discussed herein *in addition to* the protections provided by the public nature of the Commonwealth's election procedures and the appointment of poll watchers via Section 417(a) of the Election Code.

---

[11] Section 417(a) of the Election Code provides:

> Each candidate for nomination or election at any election shall be entitled to appoint two watchers for each election district in which such candidate is voted for. Each political party and each political body which has nominated candidates in accordance with the provisions of this act, shall be entitled to appoint three watchers at any general, municipal or special election for each election district in which the candidates of such party or political body are to be voted for. Such watchers shall serve without expense to the county.

25 P.S. § 2687(a). A poll watcher must be a qualified registered elector of the county in which he/she is appointed. *See* 25 P.S. § 2687(b).

I appreciate the Majority's concern that a petitioner may seek to use Section 1701(a) as an avenue to confirm for themselves the accuracy of the elections in question. However, if such a petitioner articulates a general belief that fraud or error occurred, and meets the other requirements of Sections 1701(a) and 1703(a)(1), the Election Code allows for such confirmation. I reiterate our Supreme Court's statement that the General Assembly purposely made the procedure to open ballot boxes relatively easy to accomplish (requiring only a verified belief that "fraud or error, although not manifest on the general return of votes made therefrom, was committed in the computation of the votes . . . "). *See 2003 Gen. Election for Off. of Prothonotary*, 849 A.2d at 239; 25 P.S. § 3162(a). Additional protections against abusive use of the Section 1701 petition are found in Section 1703, which requires particular fraud or error to be pleaded in secondary Section 1701 petitions (in the absence of filing the subsequent petitions in all election districts where the election was conducted). Where fraud or error is not found upon the initial opening of a ballot box pursuant to Section 1701(a), then the inquiry is complete and ends without triggering the additional petition procedures provided in Section 1703(a)(1).

While I agree with the Majority that the Election Code does not allow for the hand recount requested by petitioners, I conclude that Section 1701(a) and Section 1703(a)(1), as currently drafted, do require a court of common pleas to grant a verified petition to open a ballot box without specification of particular fraud or error brought within five days after the completion of the computational canvassing of all returns. Accordingly, I respectfully dissent.

_____
CHRISTINE FIZZANO CANNON, Judge